UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

FILED
SEP 27 1993
CLERK
U. S. DISTRICT COURT
MIDDLE DIST. OF ALA.

GAY LESBIAN BISEXUAL ALLIANCE,            )
                                          )
        Plaintiff,                        )
                                          )
   vs.                                    )    COMPLAINT
                                          )
JIMMY EVANS, in his official capacity     )
as Attorney General of the State of       )    Civil Action No.
Alabama, FREDERICK P. WHIDDON, in his     )
official capacity as President of the     )    93-T-1178-N
University of South Alabama, and DALE     )
T. ADAMS, in his official capacity as     )
Dean of Students of the University of     )
South Alabama,                            )
                                          )
        Defendants.                       )

    Plaintiff Gay Lesbian Bisexual Alliance, complaining of Defendants, does hereby allege as follows:

## Summary of Action

    1. This action challenges the constitutionality of Section 16-1-28 of the Alabama Education Code, facially and as applied, under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983. This statute, hereinafter referred to as the "Public Funds and Facilities Statute," was enacted by the Alabama legislature in the spring of 1992 to restrict the speech and associational rights of gay and lesbian student groups on Alabama state university campuses. The law has, in keeping with that purpose, been implemented to interfere with the constitutionally-protected activities of Plaintiff, the gay, lesbian and bisexual student group at the University of

South Alabama in Mobile. Plaintiff brings this suit to remedy the law's interference with its members' freedom of speech, freedom of association, and rights to equal protection and due process. Plaintiff seeks a declaration that the statute is unconstitutional and an injunction against its future enforcement against any group.

## Jurisdiction and Venue

2. Jurisdiction over plaintiff's claims is based upon 28 U.S.C. §§ 1331 and 1343(a)(3). Plaintiff brings its claims, grounded in the United States Constitution, pursuant to 42 U.S.C. § 1983. In addition, plaintiff seeks a declaratory judgment and additional relief under 28 U.S.C. §§ 2201(a) and 2202.

3. Venue is proper in this Court under 28 U.S.C. § 1391(b), because Defendant Jimmy Evans, Attorney General of the State of Alabama, resides in this district and all the defendants reside in this state.

## Parties

4. Plaintiff Gay Lesbian Bisexual Alliance ("GLBA") is a registered student organization at the University of South Alabama. The group has approximately 25 to 30 active members and has been a registered student group at the university since Winter Quarter 1992. GLBA is a social, educational and political organization that sponsors dances, speeches, AIDS prevention programs, and other events. The organization's constitution

2

states, <u>inter alia</u>, that the purpose of the group "is to provide a foundation for unification for homosexual and non-homosexual people of the student population[.]"

5. Defendant Jimmy Evans is the Attorney General of the State of Alabama and is sued in his official capacity; in that capacity, he maintains an office in Montgomery, Alabama. As the Attorney General, Evans is responsible for enforcing and defending the laws of this state, including Section 16-1-28 of the Alabama Education Code.

6. Defendant Frederick P. Whiddon is the President of the University of South Alabama, a public university, and is responsible for the operation of that institution. He is sued in his official capacity. In that capacity, he maintains an office in Mobile, Alabama.

7. Defendant Dale T. Adams is the Dean of Students at the University of South Alabama and is responsible for the university's oversight of student groups and of the Student Government Association. He is sued in his official capacity. In that capacity, he maintains an office in Mobile, Alabama.

8. All acts of the defendants alleged herein were performed under color of state law.

### The Challenged Statute

9. The bill that led to the Public Funds and Facilities Statute described its aims as follows:

> To prohibit any college or university from spending public funds or using public

> facilities, directly or indirectly, to
> sanction, recognize, or support any group
> that promotes a lifestyle or actions
> prohibited by the sodomy and sexual
> misconduct laws; to prohibit any group from
> permitting or encouraging its members or
> others to engage in or provide materials on
> how to engage in the lifestyle or actions.

House Bill 454.

10. The Public Funds and Facilities Statute's requirements provide:

> (a) No public funds or public
> facilities shall be used by any college or
> university to, directly or indirectly,
> sanction, recognize, or support the
> activities or existence of any organization
> or group that fosters or promotes a lifestyle
> or actions prohibited by the sodomy and
> sexual misconduct laws of Sections 13A-6-63
> to 13A-6-65, inclusive.
>
> (b) No organization or group that
> receives public funds or uses public
> facilities, directly or indirectly, at any
> college or university shall permit or
> encourage its members or encourage other
> persons to engage in any such unlawful acts
> or provide information or materials that
> explain how such acts may be engaged in or
> performed.
>
> (c) This act shall not be construed to
> be a prior restraint of the first amendment
> protected speech. It shall not apply to any
> organization or group whose activities are
> limited solely to the political advocacy of a
> change in the sodomy and sexual misconduct
> laws of this state.

Ala. Code § 16-1-28.

11. House Bill 454 was introduced in late February, 1992, by Representative Pete Turnham and eventually signed into law by Governor Guy Hunt on or about May 14, 1992. The legislation was triggered by a widely-publicized and heated controversy in late

4

1991 and early 1992 involving the gay and lesbian student group at Auburn University, a state institution in Auburn, Alabama.

12. On or about November 25, 1991, the Auburn Student Government Association had voted 23-7 to deny a permanent charter as an official student organization to the Auburn Gay and Lesbian Association ("AGLA"), despite AGLA's compliance with all requirements for such a charter.

13. In the midst of continuing opposition from the Auburn Student Government Association, the school's Vice President for Student Affairs overruled the students and granted AGLA the charter in early January, 1992. The Student Government Association's leader immediately asked Auburn's President to review and reverse that decision. The President affirmed the granting of the charter.

14. On or about January 31, 1992, the Alabama Senate passed a resolution praising Auburn's student government for resisting AGLA's efforts to be permanently chartered. The resolution stated that "on November 25, 1991 and January 7, 1992 [the student government] boldly objected to what is or may be considered the 'politically correct' position prevalent on many college campuses across this country in the acceptance of erotic life styles."

15. On or about February 26, 1992, the Alabama House of Representatives passed its own resolution, similarly praising the Auburn Student Government Association for its ongoing opposition to AGLA's charter. The House "commend[ed] these future leaders

of this state for standing against the threats and pressures of the Auburn Gay and Lesbian Association[.]"  The resolution also stated:

> That the House of Representatives of Alabama does not condone violations of the laws of the State of Alabama, nor does it recognize homosexual life style as an acceptable or legal alternative life style, but rather acknowledges that the State of Alabama is and resolves that it shall remain, historically traditional in its view of the family, and that the State of Alabama is a place where families can live and grow without being debased or immoralized.

The House called on the Board of Trustees of Auburn to reverse its position and "deny a charter to the Auburn Gay and Lesbian Association."

16.  On the same day that the House endorsed its resolution, Representative Turnham introduced House Bill 454 and explicitly identified the bill's target as gay and lesbian student groups. Turnham is quoted in contemporaneous press accounts as reasoning that "we are fed up with this so-called movement these people are carrying on.  We are going to make sure no public money is going to help these people carry on their bad ideas."  Sandee Richardson, "House bill aims to end funding of gay groups," The Crimson White, Feb. 28, 1992, at 1.

17.  While the bill was being considered by the Alabama legislature, Defendant Evans issued an opinion letter to Representative Perry O. Hooper, Jr., in response to a question regarding the funding of gay and lesbian organizations that

Hooper had posed earlier.  This March 19, 1992, Attorney General's opinion concludes that:

> It is our opinion that an organization that professes to be comprised of homosexuals and/or lesbians may not receive state funding or use state-supported facilities to foster or promote those illegal, sexually deviate activities defined in the sodomy and sexual misconduct laws under Sections 13A-6-63, 13A-6-64, and 13A-6-65 of the Code of Alabama 1975.

18.  Shortly before the bill was signed into law, this Court found no justiciable controversy in and dismissed Auburn University v. The Auburn Gay and Lesbian Association, et al., No. 92-D-374-E, a declaratory judgment action that had been filed by the university.  The university had asked this Court to explain the First Amendment rights of AGLA, but because Auburn had in fact granted the group's charter, the case presented no live legal dispute.  This Court refused to be "made a referee in squabbles about the university's relations with its alumni and the legislature and in its own internecine squabbles among constituencies, unless and until a justiciable controversy is presented."  Id., slip op. at 5 (May 11, 1992).

19.  With the Public Funds and Facilities Statute, state legislators sought to end the Auburn dispute by outlawing gay and lesbian campus groups such as AGLA.  Representative Mark L. Gaines, a co-sponsor of the bill that became law, was quoted in the New York Times as stating, "If the charter of this group is allowed to stand, you've opened the door for organizations that

7

promote bestiality and wife-swapping." "Leaping Into the Fray Over Gay Group at Auburn," <u>New York Times</u>, Mar. 22, 1992, at 16.

<u>The Statute's Curtailment of Protected Speech and Association</u>

20. The Public Funds and Facilities Statute references three sections of the Alabama criminal code. The first two, sections 13A-6-63 and 13A-6-64, criminalize oral or anal "deviate sexual intercourse" that is forcible, or that is engaged in with a physically or mentally helpless victim incapable of consent, or that is engaged in with a minor under 16 years of age. It is unlikely that any type of group exists on college campuses that might be shown to "foster[] or promote[]" the egregious crimes prohibited by these statutes. The Public Funds and Facilities Statute's reference to these two provisions seems included for inflammatory value only.

21. Section 13A-6-65, the third criminal code section referenced, outlaws as "sexual misconduct" vaginal intercourse where consent from the partner was not obtained or, if the partner was female, where consent was "obtained by the use of any fraud or artifice" by the charged man. Ala. Code § 13A-6-65(a)-(b). In part (c), Section 13A-6-65 goes on to prohibit consensual "deviate sexual intercourse" between two adult partners. "Deviate sexual intercourse" is defined as "any act of sexual gratification between persons not married to each other involving the sex organs of one person and the mouth or anus of another." Ala. Code § 13A-6-60(2). In its prohibition of

consensual oral and anal sex, Section 13A-6-65(c) applies equally to heterosexual and same-sex couples.

22. By denying state university funds or facilities for the "sanction, recogni[tion], or support" of "any organization or group that fosters or promotes a lifestyle or actions prohibited by" Section 13A-6-65, the Public Funds and Facilities Statute on its face bars any group -- comprised of heterosexuals; gay men, lesbians, and bisexuals; or a mix of students -- from any presence on state college campuses if the group might be interpreted to "foster or promote[]" anal or oral sex between unmarried persons. Any organization for college students that serves, in part or in whole, a social purpose might be so interpreted, and barred from the use of campus facilities and school funding under this law.

23. The statute never itself defines the types of organizations or groups potentially covered, and thus excluded from the use of public funds and facilities. Not only are official student organizations subject to the law's requirements, but also any informal group might be required to leave a school cafeteria or be barred from using campus bulletin boards if the group was branded as fostering or promoting "a lifestyle or actions prohibited" by the listed sections of the criminal code. Not only student organizations and groups, but also some community groups that take advantage of the facilities of state universities will likely be barred from using those facilities under this law.

24. The statute further requires that any organization or group receiving public funds or using university facilities police its membership and activities to ensure that it does not "permit or encourage" its members or others "to engage in any such unlawful acts or provide information or materials that explain how such acts may be engaged in or performed." Any group that includes any individual who may have engaged, or may in the future engage, in oral or anal sex with someone other than a spouse is, under the facial terms of the statute, acting illegally if that group accepts public funds or uses campus facilities.

25. Educational discussions of sexuality and public health issues also constitute unlawful activity if undertaken by any group subject to the statute -- that is, any group that directly or indirectly is supported by state funds or takes advantage of university facilities. Groups, their members, or any other persons who may be "encouraged" by the covered groups, cannot "provide information or materials that explain how such acts may be engaged in or performed." This prohibition outlaws, among other activities, education aimed at stopping the spread of HIV, the virus that causes AIDS. It also would even prohibit group members or those they influence from circulating copies of the sexual misconduct laws on campus.

26. By so extensively limiting the permissible activities of groups that receive public funding or use college facilities, as well as the permissible activities of the groups' members, the

statute restricts speech, expression and association in the university setting in violation of the First Amendment.

27. By sweeping so broadly without clearly delineating the meaning of its terms, such as "fosters," "promotes," "a lifestyle ... prohibited by the sodomy and misconduct laws," and "encourage," the statute does not sufficiently advise covered groups and their members of the precise speech, expression and conduct that are prohibited. The statute's lack of clarity, in addition, facilitates and encourages discriminatory enforcement of its provisions. The Public Funds and Facilities Statute's vagueness violates the First and Fourteenth Amendments.

28. Even where it has not been explicitly enforced, the statute exerts a profound chilling effect on open debate, on the gathering together of students, faculty members, and community members for socializing, for educational purposes, for political advocacy, and for cultural events, and on the general vitality of Alabama's public university campuses.

29. Because the law's intended target is gay and lesbian student groups, its chilling effect on those groups and its infringement of gay and lesbian students' rights has been the greatest.

### Enforcement of the Statute Against GLBA

30. Throughout the 1992-93 school year, the Public Funds and Facilities Statute was implemented by defendants to interfere with GLBA's ability to function as a registered student

organization at the school and to interfere with the constitutional rights of its members.

31. GLBA, singled out among all the registered organizations at the University of South Alabama, has been denied the ability to maintain a university bank account.

32. GLBA, and no other registered student group, has been barred from receiving funds through the Student Government Association ("SGA"). The SGA has appropriated such funds for GLBA, but defendants Whiddon and Adams have overruled the SGA and have prohibited funds from going to GLBA.

33. Defendants Whiddon and Adams have informed GLBA that they have taken these detrimental actions based upon the Public Funds and Facilities Statute. Defendants have further admitted that the statute "seems ambiguous and [that the university] needs clarification." Jan. 27, 1993, Letter of Dale T. Adams.

34. Upon information and belief, sometime in 1992 defendant Whiddon wrote to defendant Evans for an interpretation of the statute.

35. In or about the Summer Quarter of 1992, GLBA was first informed that it could not maintain a university account for any of its funds.

36. In the Fall Quarter of 1992, defendants Whiddon and Adams refused to allow SGA funds to go directly to GLBA, even with an outside bank account, but allowed the group to have some of its budget items paid for by the SGA funnelling monies through the SGA Publications Committee. The money allocated through this

committee paid for events coordinated by GLBA for World AIDS Day, including a panel discussion explaining basic information about HIV and a panel on safer sex for purposes of HIV prevention.

37.  During the SGA budget process for the Winter and Spring Quarters, the school officials' restrictive policy expanded even further.  GLBA was not funded at all during the Winter Quarter because defendants Whiddon and Adams directed the SGA to "table" GLBA's budget requests.  Throughout the Winter Quarter, defendant school officials stated that they could not act because of the Public Funds and Facilities Statute and their lack of response to their inquiry from the Attorney General, defendant Evans.

38.  In the spring budget process, GLBA submitted a budget to SGA requesting $720 for a speakers bureau event to bring a scholar from Emory University to campus, and for miscellaneous expenses that included the costs of printing information packets, subscribing to periodicals of interest to the group, video rentals, and the commercial bank charges that GLBA is forced to incur without a university account.  The SGA initially voted not to fund the group, but then decided to fund the speakers bureau component.  Defendants Whiddon and Adams refused to allow even this limited funding of GLBA activities to occur.  GLBA was forced to cancel the planned speech.

39.  On or about July 29, 1993, defendant Evans, by the Chief of the Office of the Attorney General's Opinions Division, issued an opinion that states the attorney general is responding to an inquiry of defendant Whiddon.  That inquiry is stated as:

> May the University of South Alabama Student
> Government Association provide funding to the
> Gay, Lesbian and Bi-Sexual Alliance without
> violating § 16-1-28, Code of Alabama 1975,
> concerning the provision of funds to any
> group that promotes a lifestyle prohibited by
> the sodomy and sexual misconduct laws?

The attorney general's opinion answers this question "in the negative."

40. On or about August 26, 1993, defendant Adams sent a memorandum to the President of GLBA, informing him of "a fact-finding group of faculty, staff, and students to determine if your group 'has fostered or promoted a life-style or actions prohibited by the sodomy and sexual misconduct laws...'." Upon information and belief, this group has not yet met or begun its investigative activities.

41. Other student groups at the University of South Alabama maintain university bank accounts and receive university funding through the Student Government Association. GLBA is the only recognized student group at that university whose use of a bank account and receipt of funding have been denied on the basis of the Public Funds and Facilities Statute. GLBA is the only group that the university has targeted for a "fact-finding" effort under that law.

42. The defendants' escalating enforcement of the Public Funds and Facilities Statute's restrictions has infringed upon GLBA's associational and expressive freedoms. The defendants' enforcement has singled the group out as inferior among all the student organizations at the University of South Alabama. It has

14

forced the group to consider tailoring its proposed budgets and activities in a cautious manner to attempt to comply with the broad and unclear restrictions of the law and defendants' implementation of it. The law and its increasing enforcement have also caused GLBA to fear for its continued ability to even meet on campus or to maintain its status as a registered student organization.

43. In addition, GLBA's efforts at AIDS-related education and prevention on campus are threatened by the law and its implementation. Not only the group, but also individual members, may not discuss how safely to engage in certain sexual practices, common among heterosexuals and homosexuals, without violating the law.

44. GLBA's activities are not "limited solely to the political advocacy of a change in the sodomy and sexual misconduct laws of this state," language that in section 3 of the statute apparently exempts one, very narrow type of group from its coverage. GLBA rather seeks to serve many purposes on campus as a social, educational, and political organization. This Public Funds and Facilities Statute and its enforcement have served to hamper and silence GLBA's constitutionally-protected voice of diversity and mutual respect, regardless of sexual orientation, within the university community.

### First Cause of Action (Freedom of Expression)

45. Plaintiff repeats and realleges ¶¶ 1-44, as if completely set forth herein.

46. The Public Funds and Facilities Statute, on its face and as applied by defendants, imposes content- and viewpoint-based limitations on speech and expression by organizations that receive public funds and/or use state university facilities; the law likewise restricts the speech and expression of such groups' members. In particular, the statute restricts the speech and expression of plaintiff GLBA and its members, and threatens the continued existence of plaintiff organization.

47. The Public Funds and Facilities Statute, on its face and as applied, violates the First and Fourteenth Amendments and 42 U.S.C. § 1983.

48. The Public Funds and Facilities Statute, on its face and as applied, inflicts irreparable injury by infringing upon the free speech and expression of plaintiff GLBA and its members, as well as by interfering with the free speech and expression of other groups and their members. There is no adequate remedy at law for this statute's interference with First Amendment rights.

### Second Cause of Action (Freedom of Association)

49. Plaintiff repeats and realleges ¶¶ 1-48, as if completely set forth herein.

50. The Public Funds and Facilities Statute, on its face and as applied by defendants, interferes with the freedom of

association of organizations that receive public funds and/or use state university facilities; the law likewise restricts the associational rights of such groups' members. In particular, the statute restricts the freedom of association of plaintiff GLBA and its members, and threatens the continued existence of plaintiff organization.

51. The Public Funds and Facilities Statute, on its face and as applied, violates the First and Fourteenth Amendments and 42 U.S.C. § 1983.

52. The Public Funds and Facilities Statute, on its face and as applied, inflicts irreparable injury by infringing upon the associational rights of plaintiff GLBA and its members, as well as by interfering with the associational rights of other groups and their members. There is no adequate remedy at law for this statute's interference with First Amendment rights.

### Third Cause of Action (Vagueness and Overbreadth)

53. Plaintiff repeats and realleges ¶¶ 1-52, as if completely set forth herein.

54. The Public Funds and Facilities Statute, on its face and as applied by defendants, is vague and unintelligible. It fails adequately to identify covered organizations and adequately to put covered organizations and their members on notice of the speech, expression and conduct that are forbidden. The statute encourages discriminatory enforcement of its vague provisions. In addition, the statute extends far beyond any restriction on

17

speech, expression or conduct that could conceivably be constitutionally justified by the state. This impermissibly imprecise and sweeping legislation violates the right to due process and First Amendment rights.

55. The Public Funds and Facilities Statute, on its face and as applied, violates the First and Fourteenth Amendments and 42 U.S.C. § 1983.

56. The Public Funds and Facilities Statute, on its face and as applied, inflicts irreparable injury by infringing upon the due process and First Amendment rights of plaintiff GLBA and its members, as well as those rights of other groups and their members. There is no adequate remedy at law for this statute's interference with First and Fourteenth Amendment rights.

### Fourth Cause of Action (Equal Protection -- As Applied)

57. Plaintiff repeats and realleges ¶¶ 1-56, as if completely set forth herein.

58. In applying the Public Funds and Facilities Statute, the State of Alabama and defendants have intentionally targeted GLBA, gay and lesbian student groups at other universities, and their members. Defendants have intentionally interpreted and applied the law to punish groups and individuals associated with a homosexual sexual orientation. In so doing, defendants have intentionally drawn a classification based upon sexual orientation that violates the Equal Protection Clause.

59. The Public Funds and Facilities Statute, as applied, violates the Fourteenth Amendment and 42 U.S.C. § 1983.

60. The Public Funds and Facilities Statute, as applied, inflicts irreparable injury by infringing upon the equal protection rights of GLBA, gay and lesbian student groups at other universities, and their members. There is no adequate remedy at law for this interference with Fourteenth Amendment rights.

### Prayer for Relief

WHEREFORE, plaintiff respectfully requests the Court to:

(1) Declare that the Public Funds and Facilities Statute, Section 16-1-28 of the Alabama Education Code, is facially unconstitutional under the First and Fourteenth Amendments;

(2) Declare that the Public Funds and Facilities Statute, as applied by defendants, is unconstitutional under the First and Fourteenth Amendments;

(3) Enjoin any further enforcement or application, in any manner against any university, group or individual, of the Public Funds and Facilities Statute;

(4) Award plaintiff reasonable attorneys' fees and costs; and

(5) Provide all further relief that the Court deems just and appropriate.

September 27, 1993

_____
Fern Singer
Watterson and Singer
Post Office Box 530412
Birmingham, Alabama 35253
(205) 871-3980
As Cooperating Attorney
  for the ACLU of Alabama
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

Ruth E. Harlow
William B. Rubenstein
American Civil Liberties
  Union Foundation
132 West 43rd Street
New York, New York 10036
(212) 944-9800, Ext. 545

ATTORNEYS FOR PLAINTIFF