IN THE UNITED STATES DISTRICT COURT FOR **FILED**
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

**MAY 24 1994**

THOMAS C. CAVER, CLERK
BY _____
DEPUTY CLERK

|  |  |  |
|---|---|---|
| GAY LESBIAN BISEXUAL ALLIANCE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CASE NUMBER |
| | ) | CV-93-T-1178-N |
| JIMMY EVANS, in his official | ) | |
| capacity as Attorney General | ) | |
| of the State of Alabama; | ) | |
| et al., etc., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' PROVISIONAL JOINT MOTION
## FOR LEAVE OF COURT TO FILE SUPPLEMENTAL BRIEF

COME NOW the Defendants in the above-styled and numbered cause, by and through their undersigned counsel of record, and respectfully move this Honorable Court for provisional leave to file a Supplemental Brief.

As grounds therefor, said Defendants would show unto the Court as follows:

1.   Oral argument in this cause has been reset for June 17, 1994.

2.   The Plaintiff has been allowed up and until ten (10) days prior thereto, June 7, 1994, to file a reply brief to Defendant's Brief on the Merits.

-81-

3.    Depending upon the contents of said reply brief of Plaintiff, the Defendants may wish to file a supplement to their Brief on the Merits, if at all.

WHEREFORE, PREMISES CONSIDERED, Defendants pray this Honorable Court will grant them leave to file a supplemental brief, if at all, no later than June 24, 1994, ten (10) days subsequent to oral argument(s).

Respectfully submitted this _24th_ day of May, 1994.

GEORGE E. JONES, III
DEPUTY ATTORNEY GENERAL
STATE OF ALABAMA

Attorney for Defendant Jimmy
Evans in his official
capacity as Attorney General
of the State of Alabama

ADDRESS OF COUNSEL:

Office of the Attorney General
Civil Litigation Division
Alabama State House
11 South Union Street
Montgomery, Alabama   36130
(205) 242-7418
(205) 242-7458 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that I have this the *23rd* day of May, 1994, served a copy of the foregoing by depositing same with the United Parcel Service for Next Day Air Delivery, and that I have on the *24th* day of May, 1994, served a second copy of the foregoing by depositing same in the United States Mail, postage prepaid and likewise addressed as follows:

> Fern Singer, Esq.
> Watterson and Singer
> P. O. Box 530412
> Birmingham, Alabama  35253
> ATTORNEY FOR PLAINTIFF
>
> Ruth E. Harlow, Esq.
> William B. Rubenstein, Esq.
> American Civil Liberties
>   Union Foundation
> 132 West 43rd Street
> New York, New York  10036
> ATTORNEY FOR PLAINTIFF

GEORGE E. JONES, III
DEPUTY ATTORNEY GENERAL

lesbian/brief

-83-

## INDEX TO EXHIBITS RELIED UPON BY DEFENDANTS

"A"        Letter to the Court of April 29, 1994, from J.
           Fairley McDonald, III, counsel for Defendants
           Frederick P. Whiddon and Dale T. Adams.

"B"        True copy of §36-15-21, Code of Alabama 1975.

"C"        True copy of Ex Parte Weaver, 570 So.2d 675 (Ala.
           1990).

"D"        True copy of §13A-6-60, Code of Alabama 1975,
           as amended.

"E"        True copy of §13A-6-63, Code of Alabama 1975.

"F"        True copy of §13A-6-64, Code of Alabama 1975,
           as amended.

"G"        True copy of §13A-6-65, Code of Alabama 1975.

LAW OFFICES OF

# COPELAND, FRANCO, SCREWS & GILL, P. A.

PROFESSIONAL ASSOCIATION
444 SOUTH PERRY STREET
MONTGOMERY, ALABAMA 36104

MAILING ADDRESS:
P. O. BOX 347
MONTGOMERY, AL 36101-0347

TELEPHONE (205) 834-1180

FACSIMILE (205) 834-3172

HERMAN B. FRANCO
EUEL A. SCREWS, JR.
RICHARD H. GILL
C. LANIER BRANCH
ROBERT D. SEGALL
JOHN A. HENIG, JR.
JAMES M. EDWARDS
E. TERRY BROWN
J. FAIRLEY McDONALD, III

LEE H. COPELAND
TRUMAN M. HOBBS, JR.
DAN W. TALIAFERRO
GREGORY L. DAVIS
GEORGE W. WALKER, III
PAUL W. COPELAND

ALBERT W. COPELAND
(1927-1983)
DEXTER C. HOBBS
(1955-1990)

April 29, 1994

**Via Hand Delivery**

Honorable Myron H. Thompson
United States District Judge
Federal Courthouse
15 Lee Street
Montgomery, Alabama

    **RE: Gay Lesbian Bisexual Alliance v. Jimmy Evans, etc., et al., CV-93-T-1178-N   [Our File No. 04673.001]**

Dear Judge Thompson:

    The undersigned and George Walker of this firm have been counsel of record in the referenced case for Frederick P. Whiddon and Dale T. Adams, who were made Defendants in their respective official capacities as President and Dean of Students of the University of South Alabama. We have been representing Dr. Whiddon and Dr. Adams separately from Attorney General Evans, who is also a named Defendant and who has been represented by other counsel.

    We had expected to file a brief on behalf of Dr. Whiddon and Dr. Adams on Monday, May 2, consistent with the extension the Court granted. Today, however, we were informed by the Attorney General that he was assuming control of this case as to the positions of all Defendants. As such, we have been instructed not to file any separate brief or other submission with the Court on behalf of Dr. Whiddon and Dr. Adams. Instead, the Attorney General will assume responsibility for tendering a joint response for all named Defendants. It appears, based on Alabama law and the decision in Ex parte Weaver, 570 So.2d 675 (Ala. 1990), that the Attorney General has the legal authority to direct and control litigation involving subordinate State officers like Dr. Whiddon and Dr. Adams.

    We understand that the Attorney General is seeking a second extension of time within which to submit a joint brief. This is to advise the Court that a separate submission on behalf of Dr. Whiddon and Dr. Adams will not be filed on Monday, May 2. By the

EXHIBIT "A"

Honorable Myron H. Thompson
April 29, 1994
Page Two


same token, it is our understanding at present that the oral
argument on May 20 will be handled by the Attorney General's staff.

Sincerely,

J. Fairley McDonald, III

JFM/dmc

cc:  Ruth E. Harlow, Esq.
     Fern Singer, Esq.
     George Jones, III, Esq.

perform. (Acts 1923, No. 64, p. 40; Code 1923, § 870; Code 1940, T. 55, § 242; Acts 1943, No. 299, p. 259.)

**Cited** in Gray v. Main, 309 F. Supp. 207 (M.D. Ala. 1968).

### § 36-15-21. Litigation affecting state and employment of attorneys under direction and control of attorney general.

All litigation concerning the interest of the state, or any department thereof, shall be under the direction and control of the attorney general, and the employment of any attorneys for the purpose of representing the state or any department thereof shall be by the attorney general with the approval of the governor, but nothing in this section shall prevent the governor from employing personal counsel, whose compensation shall be payable out of the governor's contingent fund. (Acts 1923, No. 64, p. 40; Code 1923, § 872; Code 1940, T. 55, § 244.)

**Section does not mean that only attorney general can litigate** the interests of the state and its various departments; a plaintiff suing in his capacity as a citizen and taxpayer has standing to attack the constitutionality of expenditures. Britnell v. Alabama State Bd. of Educ., 374 So. 2d 282 (Ala. 1979).

**This section does allow the governor to hire personal counsel for himself.** Ex parte Weaver, 570 So. 2d 675 (Ala. 1990).

**Governor may intervene in litigation.** — Although the attorney general is authorized to direct the course of all litigation involving the state and its agencies, the governor, as "chief magistrate" of the state, may intervene in any such litigation. Ex parte Weaver, 570 So. 2d 675 (Ala. 1990).

**Section 27-2-11 does not limit attorney general's power.** — The power given to the attorney general to control "all litigation" in this section is not limited by the requirement of § 27-2-11 that the attorney general provide to the insurance department such legal services "as may be required." Ex parte Weaver, 570 So. 2d 675 (Ala. 1990).

**The approval of the governor is necessary only for the employment of outside counsel** to represent a department; if private counsel is to be hired to represent a state agency, that counsel must be employed by the

attorney general with the approval of the governor. Ex parte Weaver, 570 So. 2d 675 (Ala. 1990).

**Representation of commissioner of insurance.** — Where attorney general represented the commissioner of insurance in appellate proceedings, attorney general's representation did not violate the Rules of Professional Responsibility of the Alabama State Bar regarding conflicts of interest. Ex parte Weaver, 570 So. 2d 675 (Ala. 1990).

The attorney general of the state of Alabama has the authority to move to dismiss the state department of insurance's proceedings in the Court of Civil Appeals over the objection of the commissioner of insurance. Ex parte Weaver, 570 So. 2d 675 (Ala. 1990).

**Cited** in Powers v. United States Fid. & Guar. Co., 236 Ala. 389, 182 So. 758 (1938); State ex rel. Carmichael v. Jones, 252 Ala. 479, 41 So. 2d 280 (1949); Mead v. Eagerton, 255 Ala. 66, 50 So. 2d 253 (1951); Larson v. State ex rel. Patterson, 266 Ala. 589, 97 So. 2d 776 (1957); American Benefit Life Ins. Co. v. Ussery, 373 So. 2d 824 (Ala. 1979); Lee v. Bronner, 404 So. 2d 627 (Ala. 1981); Chemical Waste Mgt., Inc. v. Broadwater, 758 F.2d 1538 (11th Cir. 1985).

**Collateral references.** — 7 Am. Jur. 2d, Attorney General, § 11.

EXHIBIT "B"

EX PARTE WEAVER
Cite as 570 So.2d 675 (Ala. 1990)

tion." 279 Ala. at 28, 185 So.2d at 381. I think Mr. Germany missed his flight. I would reverse.



**Ex parte Mike WEAVER, as Commissioner of Insurance of the State of Alabama.**

**(Re Martha H. SANDERSON, et al.**

**v.**

**BLUE CROSS AND BLUE SHIELD OF ALABAMA, et al.)**

89–418.

Supreme Court of Alabama.

Oct. 12, 1990.

Subscribers brought suit against health care insurer seeking declaratory judgment and order directing refunds of excess reserves allegedly held by health insurer. The Circuit Court, Coffee County, No. CV-88-34, entered partial summary judgment in favor of subscribers on issue of liability, holding that health insurer was illegally calculating reserves. Health insurer filed petition for writ of mandamus or prohibition. Commissioner of insurance filed appeal or, in alternative, petition for writ of mandamus. Attorney General filed motion in Court of Civil Appeals to dismiss commissioner's appeal and alternative petition for writ of mandamus. The Court of Civil Appeals granted Attorney General's motion to dismiss, ruling that Attorney General had power to manage and control litigation on behalf of state. Commissioner petitioned for writ of mandamus vacating decision of Court of Civil Appeals. The Supreme Court, Shores, J., held that Attorney General had authority to move to dismiss state insurance department's proceedings in Court of Civil Appeals over objection of commissioner of insurance.

Writ denied.

Houston, J., filed dissenting opinion.

Steagall, J., filed dissenting opinion, in which Maddox, J., concurred.

**1. Attorney General ⟐2, 6**

Statutory authority given to Attorney General to direct and control litigation, which provides that employment of attorneys for purposes of representing state or any department thereof shall be by Attorney General with "approval of the governor," makes approval of governor necessary only for employment of outside counsel to represent department and allows governor to hire personal counsel for himself. Code 1975, § 36–15–21.

**2. Attorney General ⟐6**

Attorney General had authority to move to dismiss state insurance department's proceedings in Court of Civil Appeals over objection of commissioner of insurance under Attorney General's power to direct and control litigation of state. Const. §§ 112 et seq., 113, 137; Code 1975, §§ 27–2–11, 36–15–1, 36–15–21.

**3. Attorney General ⟐6**

Attorney General's power to direct and control litigation of state and its departments was not tempered by provision of Alabama Insurance Code that Attorney General provide insurance department with such legal services "as may be required," so as to deprive Attorney General of power to dismiss appeal of commissioner of insurance over commissioner's objection. Const. §§ 112 et seq., 113, 137; Code 1975, §§ 27–2–11, 36–15–1, 36–15–21.

**4. Attorney General ⟐6**

Attorney General's representation of commissioner of insurance did not constitute violation of rules of professional responsibility such as to disqualify Attorney General from representation where no conflict of interest in Attorney General's representation of Commissioner existed despite Commissioner's objection to Attorney General's decision to seek dismissal of appellate proceedings initiated by department of insurance. Const. §§ 112 et seq., 113,

137; Code 1975, §§ 27-2-11, 36-15-1, 36-15-21.

### 5. Attorney General ⟜6

Language in Alabama Constitution providing that Attorney General "shall perform such duties as may be prescribed by law" does not restrict authority of Attorney General; rather than limiting powers of Attorney General, language generally grants Attorney General powers that were held at common law.  Const. § 137.

### 6. Attorney General ⟜6
### Constitutional Law ⟜305(1)

Commissioner of insurance was not denied due process of law guaranteed by State and Federal Constitutions by Attorney General's control of litigation involving insurance department in manner to which Commissioner objected; commissioner was party to suit as commissioner of insurance, not as individual.  U.S.C.A. Const.Amend. 14; Const. § 6.

### 7. States ⟜43

Although Attorney General is authorized to direct course of all litigation involving state and its agencies, governor, as "chief magistrate" of state, may intervene in any such litigation; as intervenor, governor may express his views and take positions contrary to those argued by Attorney General.  Code 1975, §§ 27-2-11, 36-13-2, 36-15-1, 36-15-21; Const. §§ 113, 137.

---

H.E. Nix, Jr. and Alex L. Holtsford, Jr. of Nix & Holtsford, Montgomery, for petitioner.

J. Doyle Fuller, Montgomery, N.S. Hare, Monroeville, C. Knox McLaney III, Montgomery, Gareth A. Lindsey, Elba, and Don Siegelman, Atty. Gen., for respondents.

Lawrence B. Clark and Duncan B. Blair of Lange, Simpson, Robinson & Somerville, Birmingham, for respondent Blue Cross and Blue Shield of Alabama.

Robert A. Huffaker of Rushton, Stakely, Johnston & Garrett, Montgomery, for amici curiae Tandy D. Little, James D. Martin, Robin Roland Rea, David P. Rumbarger, Lisa Walsh Shivers, James M. Sizemore, Jr., George Robinson Swift, Jr., Zack Thompson, Oscar DePriest Tucker and Thomas H. Wells.

Richard F. Allen of Capell, Howard, Knabe & Cobbs, Montgomery, for amici curiae John G. Allen, Director, Dept. of Indus. Relations, Joel Barfoot, Director, State Bd. of Pardons & Paroles, Fred O. Braswell III, Director, Alabama Dept. of Economic and Community Affairs, Bill Brock, Director, State Emergency Management Agency, John B. Dutton, Director, Alabama State Docks Dept., Jack A. Hammontree, Director, Alabama Development Office, Carol Herrmann, Com'r, Alabama Medicaid Agency, Andrew P. Hornsby, Jr., Director, Dept. of Human Resources, James Michael Horsley, Com'r, Dept. of Mental Health and Mental Retardation, Royce G. King, Director, State Highway Dept., Ivan F. Smith, Adjutant Gen., and Morris Thigpen, Jr., Com'r, Dept. of Corrections.

SHORES, Justice.

The plaintiffs in the original case are subscribers for health care benefits with Blue Cross and Blue Shield of Alabama ("Blue Cross").  They brought a class action seeking a declaratory judgment and an order directing refunds of excess reserves alleged to be held by Blue Cross.  The plaintiffs claimed that Blue Cross had "accumulated an illegal and/or excessive profit and/or reserve and surplus in excess of the amount allowed by statute in Alabama, or required for the solvency of the plan" and that Blue Cross's board of directors was not a representative cross-section of the population, as is required by statute.

Blue Cross moved to dismiss the complaint, alleging, among other things, that the subscribers had failed to exhaust administrative remedies in the Alabama Insurance Department and had failed to join the Alabama Insurance Department.  In response to the motion, the subscribers amended their complaint and added the Insurance Department as a defendant.

In March 1989, the circuit court entered orders certifying the plaintiffs' class; directing the Insurance Department to per-

form certain tasks under certain procedural rules and to report to the court; entering partial summary judgment in favor of the plaintiffs; and denying all other pending motions. The partial summary judgment in favor of the plaintiffs was entered by the trial judge on the issue of liability, i.e., he held as a matter of law that Blue Cross was illegally calculating reserves.

Blue Cross filed a petition for writ of mandamus or prohibition or both, in the Court of Civil Appeals. Mike Weaver, as Commissioner of Insurance, in June 1989 filed an appeal or, in the alternative, a petition for a writ of mandamus from the Court of Civil Appeals to vacate the trial court's order.

Attorney General Don Siegelman filed a motion on October 12, 1989, in the Court of Civil Appeals to dismiss the appeal and the alternative petition for writ of mandamus brought by the Department of Insurance. Briefs were filed and oral argument was held on November 14, 1989, in the Court of Civil Appeals on the issue of control of litigation of the Insurance Department. The Court of Civil Appeals granted the motion to dismiss, ruling that the attorney general has the power to manage and control all litigation on behalf of the State of Alabama and all of its departments.

The petition for writ of mandamus before us seeks to vacate the decision of the Court of Civil Appeals. We must determine whether the attorney general of the State of Alabama has the authority to move to dismiss the State Insurance Department's proceedings in the Court of Civil Appeals over the objection of the commissioner of insurance.

It is instructive to look at the history of the office of attorney general:

"The office of attorney general had its nascence in the *attornatus regis* of the thirteenth and fourteenth century England.[1] The *attornatus regis* served as the sovereign's primary legal representative, with considerable power subject to limitation only by the King. The office was carried over to colonial America, where it eventually became the office of attorney general. All fifty states have

an office of attorney general created either by constitution or statute. The specific powers and duties vested in the office vary greatly among the states. Although some states restrict the attorney general's common-law powers by express statutory or constitutional language, the large majority of states have chosen to recognize the existence of these powers.[2]

"The most far-reaching of the attorney general's common-law powers is the authority to control litigation involving state and public interests. It is generally accepted that the attorney general is authorized to bring actions on the state's behalf.[3] As the state's chief legal officer, 'the attorney-general has power, both under common law and by statute, to make any disposition of the state's litigation that he deems for its best interest.... [H]e may abandon, discontinue, dismiss or compromise it.'[4] In addition to having authority to initiate and manage an action, the attorney general may elect not to pursue a claim or to compromise or settle a suit when he determines that continued litigation would be adverse to the public interest.[5]

"Most courts have given the attorney general 'a broad discretion ... in determining what matters may, or may not, be of interest to the people generally.'[6] The investment of such discretion is based on the premise that the attorney general should act on behalf of the public interest, or as the 'people's attorney.' In an early North Carolina Supreme Court decision, the court refused to interfere with the attorney general's use of his discretionary power to enter a nolle prosequi on grounds that the authority had not been used 'oppressively.'[7] Other courts have left undisturbed the use of the power to control litigation as long as the attorney general's actions are not arbitrary, capricious, or in bad faith.[8]

---

[1] For a more detailed description of the development of the Office of Attorney General from its origins in England through the colonial period, see Committee on the Office of Attorney General, the National Association of

Attorneys General, Common Law Powers of State Attorneys General, at 68 (1980).

"2 See COMMON LAW POWERS, supra note 1, at 25–27 (identifying 35 states in which the attorney general is recognized as having common-law powers).

"3 Edmisten, *The Common Law Powers of the Attorney General of North Carolina,* 9 N.C.Cent. L.J. 1, at 10 (1977).

"4 *State v. Finch,* 128 Kan. 665, 671, 280 P. 910, 912 (1929).

"5 *Secretary of Admin. & Fin. v. Attorney Gen.,* 367 Mass. 154, 326 N.E.2d 334 (1975)....

"6 *Mundy v. McDonald,* 216 Mich. 444, 450, 185 N.W. 877, 880 (1921).

"7 *State v. Thompson,* 10 N.C. (3 Hawks) 613, 614 (1825).

"8 See e.g. *Feeney v. Commonwealth,* 373 Mass. 359, 366 N.E.2d 1262 (1977) (discretionary power not to be used in arbitrary or capricious manner); *Cooley v. South Carolina Tax Comm'n,* 204 S.C. 10, 28 S.E.2d 445 (S.C.1943) (Attorney General found to have acted in good faith)."

Note, "Tice v. Department of Transportation: A Declining Role for the Attorney General?" 63 N.C.L.R. 1051 at 1053–54 (1985).

Next, we look at the Alabama Constitution of 1901, which created the office of attorney general. Article V of the Alabama Constitution of 1901 creates the executive department of the State of Alabama. "The executive department shall consist of a governor, lieutenant governor, attorney-general, state auditor, secretary of state, state treasurer, superintendent of education, commissioner of agriculture and industries and a sheriff for each county." Art. V, Sec. 112. All of these officers, with the exception of the sheriff for each county, are elected at large by the qualified electors of the state. Art. V, Sec. 114.

Article V provides that "[t]he supreme executive power of this state shall be vested in a chief magistrate, who shall be styled 'The Governor of the State of Alabama.'" Art. V, Sec. 113. "The governor shall take care that the laws be faithfully executed." Art. V, Sec. 120. The commissioner of insurance argues that the Governor has the right under the Constitution to hire counsel other than the attorney general to represent the commissioner. He contends that under the Constitution of Alabama the actions of the Governor have a higher sanction than the actions of the

attorney general, since the Governor is the state's chief magistrate.

Article V, Sec. 137, of the Alabama Constitution of 1901, as amended by Amendment 111, sets forth the general duties of the attorney general of Alabama:

"Sec. 137. The attorney general ... shall perform such duties as may be prescribed by law.... The attorney general ... shall not receive to [his] use any fees, costs, perquisites of office or other compensation than the salaries prescribed by law, and all fees that may be payable for any services performed by such officers shall be at once paid into the state treasury. The legislature may require the attorney general to defend any or all suits brought against the state, or any subdivision thereof, or against any state school board or state board of education, or against any county or city school board or board of education, or against like boards or commissions by whatever name designated, or against any members, officers or employees of any such boards, or against any school official or employee throughout Alabama."

Code of Alabama 1975, § 36–15–1, sets forth the duties of the attorney general. These include the following:

"The attorney general shall keep his office at the capitol and perform the following duties:

"....

"(3) He must attend, on the part of the state, to all criminal cases pending in the supreme court or court of criminal appeals, and to all civil actions in which the state is a party in the supreme court or court of civil appeals. He shall also attend to all cases other than criminal that may be pending in the courts of Montgomery county, in which the state may be in any manner concerned, and when required to do so by the governor in writing, shall appear in the courts of other states or of the United States, in any case in which the state may be interested in the result."

Further statutory authority is given to the attorney general in § 36–15–21:

"All litigation concerning the interest of the state, or any department thereof, shall be under the direction and control of the attorney general, and the employment of any attorneys for the purpose of representing the state or any department thereof shall be by the attorney general with the approval of the governor, but nothing in this section shall prevent the governor from employing personal counsel, whose compensation shall be payable out of the governor's contingent fund."

[1] The commissioner contends that the power of the attorney general to direct and control litigation is tempered by the language "with the approval of the governor." However, when § 36–15–21 is closely read, it is apparent that the approval of the Governor is necessary only for the employment of outside counsel to represent a department. In other words, if private counsel is to be hired to represent a state agency, that counsel must be employed *by* the attorney general with the approval of the Governor. Section 36–15–21 does allow the Governor to hire personal counsel for himself.

[2, 3] The Alabama Insurance Code provides as follows: "The attorney general shall assign to the department an assistant attorney general who shall render to the commissioner such legal services as may be required." § 27–2–11. The commissioner argues that the power given to the attorney general to control "all litigation" in § 36–15–21 is tempered and limited by the requirement of § 27–2–11 that the attorney general provide to the Insurance Department such legal services "as may be required." Therefore, he argues, the attorney general does not have the power to dismiss the appeal of the commissioner of insurance.

The attorney general argues in response that the authority to control litigation affecting the interest of the state is vested in him pursuant to § 36–15–1(3) and § 36–15–21, Code of Alabama 1975. He contends that the attorney general must have control of litigation in order to avoid confusion and the chaos of state agencies suing each other. The attorney general

cites the Court to *State ex rel. Carmichael v. Jones,* 252 Ala. 479, 41 So.2d 280 (1949). In that case the attorney general brought a mandamus action to compel the trial court to enter a consent judgment in a case pending between the State Department of Revenue and several defendants. The question presented was whether the attorney general was authorized and empowered to settle a pending suit by the State filed by him in his official capacity for the collection of an unliquidated tax claim, by taking a consent judgment in the cause for less than the amount sued for and claimed to be due by the revenue department. This Court held "that the attorney general, as the chief law officer of the state, was fully empowered to make any bona fide disposition of the cause as in his judgment might be deemed to be to the best interest of the state, unless inhibited by organic law." 252 Ala. at 485, 41 So.2d at 285.

By so holding, this Court rejected the argument of the revenue department that § 139 proscribed the attorney general from making such a settlement:

"In coming to this conclusion we thus rationalize. The attorney general is a constitutional officer, the chief law officer of the state, and on him are conferred various authorities and duties in connection with instituting and prosecuting, in the name of the state, suits and other proceedings at law and in equity for the preservation and protection of the rights and interests of the state (Constitution, §§ 112, 137), and if § 139 were intended to so abridge his general authority over lawsuits instituted by him by subjecting his decisions in such matters to another executive head, not necessarily learned in the law, we think it should have said so by more specific language.

"The following provisions in the Code imposing various duties and conferring various powers on the attorney general are persuasive to this view: Code 1940, Title 55, §§ 228, 229, 234, 235, 236, 240, 244. We take particular notice of § 244 [now § 36–15–21], which in effect provides that all litigation concerning the interest of the state or any department

thereof shall be under the direction and control of the attorney general. Taking into consideration the scope of authority and duty imposed on him by these statutes, we do not think they were intended to mark the limits or bounds of his authority, but to indicate certain specific duties and confer certain definite authority in the instances mentioned. Indeed, we intimated as much in *McDowell v. State*, 243 Ala. 87, 89, 8 So.2d 569, 570, where it was observed:

> " 'We can perceive of no good reason why the express statutory authority of the Attorney General to institute and prosecute suits should not carry with it the implied authority to do all things necessary and proper to their final conclusion.  •  •  •'
>
> "The stronger current of opinion affirms that the attorney general's powers are as broad as the common law unless restricted or modified by statute....
>
> "....
>
> "We also observe an interesting text to like effect in 5 American Jurisprudence 240, § 11:
>
> > " 'Ordinarily the attorney general, both under the common law and by statute, is empowered to make any disposition of the state's litigation which he deems for its best interest. His power effectively to control litigation involves the power to discontinue if and when, in his opinion, this should be done. Generally, therefore, the attorney general has authority to direct the dismissal of proceedings instituted in behalf of the state.  •  •  •'"

*Id.*, 252 Ala. at 484, 41 So.2d at 284.

The commissioner argues that *Carmichael* is not controlling. He cites us to *American Benefit Life Ins. Co. v. Ussery*, 373 So.2d 824 (Ala.1979), wherein this Court held that the attorney general could not be a legal representative of the commissioner of insurance as receiver unless so requested. However, that case is readily distinguished from the present case. In *American Benefit Life Ins. Co.*, the commissioner was acting in his capacity as a court-appointed receiver of an insolvent in-

surance company. "A receiver is a representative or arm of the court." *Id.* at 828, quoting *Sullivan Timber Co. v. Black*, 159 Ala. 570, 48 So. 870 (1909). "When the Commissioner acts as receiver, his primary obligations are to the policyholders, the court, and the creditors of the insolvent insurance company." 373 So.2d at 828. In the present case the commissioner is not a receiver acting under the auspices of a circuit court; he is the head of a department of state government.

A related case was decided by the United States District Court for the Southern District of Alabama. *Mobil Oil Corp. v. Kelley*, 353 F.Supp. 582 (S.D.Ala.1973), *affirmed*, 493 F.2d 784 (5th Cir.1974), *cert. denied*, 419 U.S. 1022, 95 S.Ct. 498, 42 L.Ed.2d 296 (1974). In that case, Mobil Oil Corporation filed an application with the Alabama Oil and Gas Board for a permit to drill a well at a location in Mobile Bay that the corporation had leased from the State of Alabama. Until the filing of that application, such permits had been issued routinely by the Oil and Gas Board. The then-attorney general of Alabama, William Baxley, as attorney for both the director of conservation and the Oil and Gas Board, publicly announced his objection to the drilling in Mobile Bay, and advised the Oil and Gas Board that he would fight it.

In holding that an injunction requested by Mobil Oil was not warranted, Chief Judge Pittman stated:

> "The Attorney General of the State of Alabama has not unreasonably nor unlawfully interfered with the activities of the State Oil and Gas Board or the United State Corps of Engineers. He has wide discretion in determining what actions he should take in protecting what he conceives to be the best interest of the State of Alabama and the citizens thereof. The actions taken by him in the case at hand were an exercise of that discretion and in fulfillment of the duties of the office."

*Id.* at 586.

The Supreme Court of Massachusetts addressed the question "whether the power of the Attorney General to establish a co-

herent legal policy for the Commonwealth includes the authority to chart a course of legal action which is opposed by the administrative officers he represents." *Feeney v. Commonwealth*, 373 Mass. 359, 366 N.E.2d 1262, 1265 (1977). This was a certified question from the United States Supreme Court and involved the attorney general's right to prosecute an appeal to that Court. The Supreme Court of Massachusetts held that the attorney general was acting within his authority in prosecuting an appeal to the Supreme Court of the United States, despite the opposition voiced by the State officers whom he represented and their refusal to consent to the appeal. 373 Mass. at 368, 366 N.E.2d at 1267. "Where, in his judgment, an appeal would further the interests of the Commonwealth and the public he represents, the Attorney General may prosecute an appeal to the Supreme Court of the United States from a judgment of the District Court over the expressed objections of the State officers he represents." *Id.*

The Supreme Court of Massachusetts reasoned as follows:

"The role of the Attorney General when he represents the Commonwealth and State officers in legal matters is markedly different from the function of the administrative officials for whom he appears. Not only does the Attorney General represent the Commonwealth as well as the members of the Commission and the Personnel Administrator in accordance with G.L. c. 12, § 3, '[h]e also has a common law duty to represent the public interest.... [Citations omitted.] Thus, when an agency head recommends a course of action, the Attorney General must consider the ramifications of that action on the interests of the Commonwealth and the public generally, as well as on the official himself and his agency. To fail to do so would be an abdication of official responsibility.' *Secretary of Administration & Fin. v. Attorney Gen.*, 367 Mass. 154 at 163, 326 N.E.2d 334 at 338 (1975). It would also enervate the Legislature's clearly articulated determination to allocate to the Attorney General complete responsibility for all the

Commonwealth's legal business. To permit the Commission and the Personnel Administrator, who represent a specialized branch of the public interest to dictate a course of conduct to the Attorney General could effectively prevent the Attorney General · from establishing and sustaining a uniform and consistent legal policy for the Commonwealth. *Ibid.*
" . . . .

"The authority of the Attorney General, as chief law officer, to assume primary control over the conduct of litigation which involves the interests of the Commonwealth has the concomitant effect of creating a relationship with the State officers he represents that is not constrained by the parameters of the traditional attorney-client relationship. The language of G.L. c. 12, § 3, its legislative history and the history of the office indicate that the Attorney General is empowered when he appears for State officers to decide matters of legal policy which would normally be reserved to the client in an ordinary attorney-client relationship. *Secretary of Administration & Fin. v. Attorney Gen.*, supra, 367 Mass. at 159, 326 N.E.2d 334. . . . "

*Feeney v. Commonwealth*, 373 Mass. 359 at 365–66, 366 N.E.2d 1262 at 1266. The Massachusetts Supreme Court went on to say that the power to formulate legal policy for the Commonwealth of Massachusetts "may not be used in an arbitrary, capricious or illegal manner." 373 Mass. at 368, 366 N.E.2d at 1267. The Court in *Feeney* found no evidence that the attorney general's conduct was of this nature. *Id.*

This Massachusetts Supreme Court decision explains the unusual nature of the office of the attorney general and the reason that that office is empowered to control the litigation of state agencies. It further recognizes that the attorney general's relationship to the heads of state agencies is not the ordinary attorney-client relationship.

[4] The commissioner argues that the attorney general should be disqualified from representing the commissioner of in-

surance because, he asserts, this representation violates the Rules of Professional Responsibility of the Alabama State Bar. He argues that it is an elementary principle of legal ethics that an attorney cannot represent both sides to a dispute and that there exists a conflict of interest in the attorney general's representation of the commissioner. We do not agree.

The Supreme Court of Connecticut addressed a situation in which the attorney general represented both sides of the issue in a lawsuit concerning state agencies. *Connecticut Comm'n on Special Revenue v. Connecticut Freedom of Information Comm'n,* 174 Conn. 308, 387 A.2d 538 (1978). In that case, the attorney general had appeared for both the Connecticut Commission on Special Revenue and the Freedom of Information Commission of Connecticut. The trial judge had ordered the attorney general to withdraw on the grounds of conflict of interest, citing Canon 5 of the Code of Professional Responsibility and Disciplinary Rule 5–105(A), (B), and (D), as well as Matthew 6:24 ("no man can serve two masters") in so holding. The Supreme Court of Connecticut rejected this argument, which is identical to the argument advanced here by the commissioner. The Connecticut Supreme Court ordered the trial court to allow the attorney general to represent both agencies, finding that assistant attorneys general could appear for the agencies.

Similarly, the Supreme Court of Mississippi considered the power of the attorney general to appear as counsel for the State of Mississippi (as intervenor) in an appeal, while at the same time controlling the legal representation of the Mississippi Public Service Commission. The court stated:

"Considering our scheme of laws with respect to the attorney general being the chief legal officer of the State with the duty to represent the many agencies of the State and his duty to protect the public interest, we are of the opinion and hold that the majority rule will afford maximum protection to the public interest as well as afford complete legal representation to the various state agencies."

*State ex rel. Allain v. Mississippi Public Service Commission,* 418 So.2d 779, 784 (Miss.1982). The Mississippi Supreme Court stated the majority rule as follows:

"The prevailing rule is that where the attorney general has common law powers, he has the inherent right to intervene in all suits affecting the public interest when he has no personal interest therein."

*Id.* at 783. Having adopted this rule, the Court concluded that the attorney general could, in fact, represent both sides of the case. The Mississippi Supreme Court reasoned:

"The attorney general has a large staff which can be assigned in such manner as to afford independent legal counsel and representation to the various agencies. The unique position of the attorney general requires that when his views differ from or he finds himself at odds with an agency, then he must allow the assigned counsel or specially appointed counsel to represent the agency unfettered and uninfluenced by the attorney general's personal opinion. If the public interest is involved, he may intervene to protect it."

*Id.* at 783. See *Public Utility Comm'n of Texas v. Cofer,* 754 S.W.2d 121 (Tex.1988); contra *City of York v. Pennsylvania Public Utility Comm'n,* 449 Pa. 136, 295 A.2d 825 (1972).

The United States District Court for the Northern District of Mississippi in *Wade v. Mississippi Cooperative Extension Service,* 392 F.Supp. 229 (N.D.Miss.1975), considered the question that was phrased by Chief Judge Keady as follows:

"Today we are called upon to decide a delicate but highly significant question of state law—whether in a case of undeniable statewide interest the Attorney General of the State of Mississippi has authority to assume defense of an action against the Board of Trustees of State Institutions of Higher Learning (the Board), an autonomous and constitutional state agency which wishes instead to

retain private counsel to represent its official interests."

*Id.* at 231. After reviewing the Mississippi statute,[1] the federal district court held:

"We hold that the Board is without power to engage counsel in this cause, to represent its official interests independently, and over the objection of the State's Attorney General, and the Attorney General's motion to strike is hereby sustained."

*Id.* at 235.

The Supreme Court of Illinois addressed a similar question in *Environmental Protection Agency v. Pollution Control Bd.,* 69 Ill.2d 394, 14 Ill.Dec. 245, 372 N.E.2d 50 (1977). The question presented was whether a state agency could employ private counsel to represent it and have the fees paid by the attorney general in the absence of an appointment of counsel by the attorney general or by the court. The Supreme Court of Illinois stated:

"[I]t is sufficient to observe that this court has consistently held, under both the 1870 and 1970 constitutions that the Attorney General is the chief legal officer of the State; that is, he or she is the law officer of the people, as represented in the State government, and its only legal representative in the courts. (*Fergus v. Russel* (1915), 270 Ill. 304, 337, 110 N.E. 130, 143, which is the seminal case; *Stein v. Howlett* (1972), 52 Ill.2d 570, 289 N.E.2d 409). Although there has been criticism of this virtually exclusive grant of power to the Attorney General, this court has not wavered from that view, and critics recognize this is the law. (Comment, *The Illinois Attorney General: Exclusive Legal Counsel for the State?* 1975 U.Ill.L.F. 470 (176–178).)"

69 Ill.2d at 398–399, 14 Ill.Dec. at 246, 372 N.E.2d at 51. The Illinois Supreme Court went on to say that "[t]he Attorney Gener-

al's responsibility is not limited to serving or representing the particular interests of state agencies, including opposing state agencies, but embraces serving or representing the broader interests of the State." 69 Ill.2d at 401, 14 Ill.Dec. at 248, 372 N.E.2d at 53. See also *People ex rel. Scott v. Briceland,* 65 Ill.2d 485, 3 Ill.Dec. 739, 359 N.E.2d 149 (1977).

The Supreme Court of North Carolina had before it a declaratory judgment action to determine the duties of the governor and the attorney general in connection with lawsuits filed against the State. *Martin v. Thornburg,* 320 N.C. 533, 359 S.E.2d 472 (1987). In that case the governor and the attorney general of North Carolina took different legal positions. The North Carolina Supreme Court sought to determine whether the duty of the attorney general to appear for the State in any proceeding in which the State may be a party, as provided for in N.C.G.S. § 114–2(1), violates Article III, § 1, of the North Carolina Constitution. Article III, § 1, provides that "[t]he executive power of the state shall be vested in the Governor." The court concluded that the duties of the attorney general as prescribed by statutory and common law include the duty to appear for and to defend the State or its agencies in all actions in which the State may be a party or be interested. Therefore, the attorney general could determine the procedural steps necessary to protection of the state's interest in the action. The North Carolina Supreme Court noted that it found support in the following general statement of law:

"In the absence of explicit legislative expression to the contrary, the attorney general possesses entire dominion over every civil suit instituted by him in his official capacity ..., and his authority extends as well to control of defense of civil suits against the state, its agencies,

1. The Mississippi statute states in relevant part: "The attorney general ... shall be the chief legal officer and advisor for the state, both civil and criminal, and is charged with managing all litigation on behalf of the state. No arm or agency of the state government shall bring or defend a suit against another such arm or agency without prior written approval of the attorney general.

He shall have the power of the attorney general at common law and is given the sole power to bring or defend a lawsuit on behalf of a state agency, the subject matter of which is of statewide interest." *Wade v. Mississippi Cooperative Extension Service,* 392 F.Supp. 229, 231 n. 2 (N.D.Miss.1975).

and officers. 7A C.J.S. Attorney General § 12 (1980)."

320 N.C. at 546, 359 S.E.2d at 479.

[5] Article V, Sec. 137, of the Alabama Constitution provides: "The attorney general ... shall perform such duties as may be prescribed by law." It has been suggested that this wording restricts the authority of the attorney general. However, this is not the general rule. The Supreme Court of Utah in *Hansen v. Barlow*, 23 Utah 2d 47, 456 P.2d 177 (1969), adopted the reasoning of the Supreme Court of Montana in *State ex rel. Olsen v. Public Service Comm'n*, 129 Mont. 106, 283 P.2d 594 (1955), as to the general rule. The Utah Supreme Court noted that Article VII, Sec. 18 of the Utah Constitution provides: "The Attorney General shall be the legal adviser of the State Officers and shall perform such other duties as may be provided by Law." 23 Utah 2d at 48, 456 P.2d at 178. This section of the Utah Constitution is similar to Article V, Sec. 137, of the Alabama Constitution. The Utah Supreme Court, as the Montana Supreme Court had done, reasoned that this language, rather than limiting the powers of the attorney general, grants the attorney general the powers that were held by him at common law:

"It is the general consensus of opinion that in practically every state of this Union whose basis of jurisprudence is the common law, the office of attorney general, as it existed in England, was adopted as a part of the governmental machinery, and that in the absence of express restrictions, the common-law duties attach themselves to the office so far as they are applicable and in harmony with our system of government."

*Hansen v. Barlow*, 23 Utah 2d 47, 456 P.2d 177, 178 (1969).

[6] Finally, the commissioner argues that he has been denied the due process of law guaranteed by the Fourteenth Amendment of the United States Constitution and Article I, Section 6, of the Alabama Consti-

tution. We reject this argument on the authority of *State of South Carolina v. Katzenbach*, 383 U.S. 301, 324, 86 S.Ct. 803, 816, 15 L.Ed.2d 769, 784 (1966), citing *International Shoe Co. v. Cocreham*, 246 La. 244, 266, 164 So.2d 314, 322 n. 5, *cert. denied*, 379 U.S. 902, 85 S.Ct. 193, 13 L.Ed.2d 177 (1964). Mike Weaver is a party to this suit as commissioner of insurance, not as an individual.

We have carefully reviewed the law and the precedents in this case. The overwhelming authority supports the decision of the Court of Civil Appeals that the attorney general has the power to manage and control all litigation on behalf of the State of Alabama. We hold that the attorney general of the State of Alabama has the authority to move to dismiss the State Department of Insurance's proceedings in the Court of Civil Appeals over the objection of the commissioner of insurance.

[7] We recognize that there may be times when the Governor disagrees with the attorney general about matters in litigation. Although we determine that the attorney general is authorized to direct the course of all litigation involving the State and its agencies, the Governor, as "chief magistrate" of the State,[2] may intervene in any such litigation. Rule 24, A.R.Civ.P. As an intervenor,[3] the Governor may express his views and take positions contrary to those argued by the attorney general.

The writ of mandamus is denied.

WRIT DENIED.

HORNSBY, C.J., and JONES, ALMON and ADAMS, JJ., concur.

MADDOX, HOUSTON and STEAGALL, JJ., dissent.

HOUSTON, Justice (dissenting).

POWER! That is what this appeal is about. This appeal does not address in any way the merits of the underlying litigation.

"[W]hich entity [the attorney general or the commissioner of insurance] controls

2. Ala.Const.1901, § 113.

3. The Governor may appear through counsel employed pursuant to § 36-13-2 or the last clause of § 36-15-21, Code 1975.

whether [Mike Weaver, as commissioner of insurance of the State of Alabama] remains a party to the appeal[?]"

This is the issue posited in the majority opinion of the Court of Civil Appeals. To me, the issue is much broader.

Does the attorney general of the State of Alabama under his legislative mandate to direct and control litigation concerning the interest of the State or any department thereof, Ala.Code 1975, § 36–15–21, have the power to make substantive policy decisions contrary to the decisions of the department or agency that he is representing?

The Alabama Constitution of 1901, Art. V, § 112, as amended by Amendment No. 284, provides:

*"The executive department shall consist of a governor,* lieutenant governor, *attorney-general,* state auditor, secretary of state, state treasurer, superintendent of education, commissioner of agriculture and industries, and a sheriff for each county."

(Emphasis supplied.)

The Alabama Constitution of 1901, Art. V, § 113, provides:

*"The supreme executive power of this state shall be vested* in a chief magistrate, who shall be styled '*The Governor* of the State of Alabama.'"

(Emphasis supplied.)

*Black's Law Dictionary* 1292 (5th ed. 1979) defines "supreme" as "[s]uperior to all other things." *The American Heritage Dictionary of the American Language* 1293 (1969) defines "supreme" as "[g]reatest in power, authority, or rank; paramount; dominant. Greatest in importance, degree, significance, character, or achievement; utmost; extreme. Ultimate; final." *Black's Law Dictionary,* at 511, defines "executive powers":

"Power to execute laws.... The executive powers vested in governors by state constitutions include the power to execute the laws, that is, to carry them

into effect, as distinguished from the power to make the laws and the power to judge them."

In *Martindale v. Anderson,* 581 P.2d 1022, 1027 (Utah 1978), the Supreme Court of Utah wrote:

"[E]xecutive powers are policy execution powers. Legislative power, as distinguished from executive power, is the authority to make laws, but not to enforce them or to appoint the agents charged with the duty to make such enforcement. The latter are executive functions. They are the acts necessary to carry out legislative policies and purposes and are deemed acts of administration."

The Constitution of this State gives the Governor power superior to all others, the ultimate final power, to execute and enforce laws and to appoint the agents charged with the duty to execute laws. "Supreme," when it appears before the phrase "executive power," means no less than it does when it precedes the word "court" in § 6.02 of Amendment No. 328 to the Alabama Constitution ("[t]he Supreme Court shall be the highest Court of the State").

The Alabama Constitution of 1901, Art. V, § 120, further provides: "The Governor shall take care that the laws be faithfully executed."

Thus, the source document, the Alabama Constitution of 1901, defines the Governor's power and the Governor's duty.

In furtherance of these constitutional mandates, the Legislature has confirmed in the Governor the responsibility and concomitant authority to control and to coordinate the affairs and the business of the State by recognizing the Governor's right to control the actions of members of the executive branch. To ensure that officials in the executive branch of government adhere to the Governor's policies and submit to his will, the Governor is generally given the authority to appoint and to remove these officials with or without cause.[4]

___

4. For example, the following officials are appointed by and serve at the pleasure of the Governor: the adjutant general of the Alabama

National Guard, Ala.Code 1975, § 31–2–58; the commissioner of corrections, Ala.Code 1975, § 14–1–1.3; the director of development, Ala.

The Legislature created the Department of Insurance of the State of Alabama (Ala. Code 1975, § 27-2-1) and provided that the commissioner of insurance shall be the chief executive officer of the department and shall be appointed by the Governor and shall serve for a term concurrent with that of the Governor by whom the commissioner was appointed or for the unexpired portion thereof. Alabama Code 1975, § 36-13-7, provides:

> "The Governor is authorized and empowered to remove from office and discharge from employment, with or without cause, any person who holds office or employment in any of the state executive departments and agencies by virtue of appointment by the incumbent governor or any preceding governor, except those employees subject to the merit system provisions."

Under this constitutional and statutory structure, the Governor, as the supreme executive responsible under the Constitution for the execution of the laws of this State, acts by and through agency and departmental heads, who serve as vehicles by which the Governor carries out his constitutional mandate. By executing his power to appoint and to remove, the Governor ensures that the executive departments and agencies implement his decisions and adhere to his policies and his interpretations of the laws so that his decisions may be faithfully executed. The act of any of these subordinate executives is the act of the Governor himself.

The laws pertaining to insurance that the Governor must execute through the commissioner of insurance, whom he shall select "with special reference to his training, experience, and capacity" (Ala.Code 1975, § 27-2-2(b)), are found primarily in Tit. 27, Ala.Code 1975, which consists of 46 chapters, hundreds of sections, and over 600 pages. In addition, and as it pertains to the underlying case, the Legislature, pursuant to Ala.Code 1975, §§ 10-4-100, -115,

has given to the commissioner of insurance certain duties and certain powers to regulate health care service plans. Blue Cross and Blue Shield is a special purpose corporation organized under this section for the specific and limited purpose of maintaining a health care service plan for subscribers. *Blue Cross & Blue Shield v. Protective Life Ins. Co.*, 527 So.2d 125 (Ala.Civ.App. 1987). Every corporation that provides a health care service plan ("health care service corporation") must procure from the commissioner of insurance a certificate of authority to do business (§ 10-4-106); no health care service corporation can issue or sell any contract until the form of the contract has been filed with the commissioner of insurance (§ 10-4-106); and a health care service corporation must file with the commissioner of insurance any change in rates, charges, fees, and dues. It is the duty of the commissioner of insurance to approve or disapprove in writing the rates, charges, fees, and dues, after making certain that they are not unreasonably high or excessive, that they are adequate to meet the liability assumed under the contracts and all expenses in connection therewith, and that they are adequate for the safety and soundness of the health care service corporation. In making this determination, the commissioner shall take into account past and prospective loss experience (§ 10-4-109). In § 10-4-110, the commissioner is given the following powers:

> "The commissioner of insurance or any of his designated deputies or examiners shall have the power of visitation and examination into the affairs of such corporation, shall have free access to all books, papers, and documents that relate to the business of said corporation and may summon and qualify witnesses under oath and examine them in relation to the affairs, transactions and conditions of the corporation, and make public disclosure of his findings. Such examina-

---

Code 1975, § 41-9-201; the director of the Department of Economic and Community Affairs, Ala.Code 1975, § 41-23-4; the director of emergency management, Ala.Code 1975, § 31-9-4; the highway director, Ala.Code 1975, § 23-1-21;

the director of industrial relations, Ala.Code 1975, § 25-2-6; the commissioner of mental health, Ala.Code 1975, § 22-50-16; and the director of public safety, Ala.Code 1975, § 32-2-1.

tion shall be made at the expense of the corporation."

Health care service corporations must obtain from the commissioner of insurance a certificate of authority for every individual agent writing or soliciting health care certificates for the health care service corporation (§ 10–4–111). Health care service corporations must deposit certain securities with the state treasurer, and these securities may be replaced from time to time by other authorized securities of equal value, with the approval of the commissioner of insurance (§ 10–4–112). Each health care service corporation must annually file in the office of the commissioner of insurance a statement verified by at least two of the principal officers of the health care service corporation, showing its condition on December 31 next preceding, in the form, and containing such matters, as the commissioner of insurance shall prescribe (§ 10–4–113). Section 10–4–113 also provides:

"Every such corporation shall set up as the liability for unperformed contracts or unearned dues on all outstanding certificates 95 percent of the unearned net dues or charges collected on such contracts computed on a monthly basis (by net dues is meant the amount received by the corporation less acquisition costs). Every such corporation shall at all times hold assets equal to such aggregate amount so computed over and above all other liabilities, but the commissioner of insurance shall allow to the credit of every such company in the account of its financial condition all such assets as are, or can be made, available for the payment of claims or losses in Alabama."

Likewise, § 10–4–114 provides:

"All decisions, findings, and orders of the commissioner of insurance made under the provisions of this article shall be subject to review, revision, and reversal by proper proceedings brought in any court of competent jurisdiction within 30 days from the date of the decision, finding, or order; and the decision of such court may be reviewed by appeal."

THEREIN LIES THE POWER.

The majority opinion begins with the attorney general, whose duties and powers I now examine. The Alabama Constitution of 1901, Art. V, § 112, as amended by Amendment No. 284, provides: "The executive department shall consist of [an] ... attorney-general...." The Alabama Constitution of 1901, Art. V, § 137, as amended by Amendment No. 111, provides, in pertinent part: "The attorney general ... shall perform such duties as may be required by law." There is nothing in the Constitution that gives the attorney general any specific power.

Those duties of the attorney general relevant to the case at issue are as follows:

"He must attend, on the part of the state, ... to all civil actions in which the state is a party in the supreme court or court of civil appeals. He shall also attend to all cases other than criminal that may be pending in the courts of Montgomery county, in which the state may be in any manner concerned...."

Alabama Code 1975, § 36–15–1(3).

"All litigation concerning the interest of the state, or any department thereof, shall be under the direction and control of the attorney general, and the employment of any attorneys for the purpose of representing the state or any department thereof shall be by the attorney general with the approval of the governor, but nothing in this section shall prevent the governor from employing personal counsel, whose compensation shall be payable out of the governor's contingent fund."

Alabama Code 1975, § 36–15–21.

"The attorney general shall assign to the department [of insurance] an assistant attorney general who shall render to the commissioner such legal services as may be required."

Alabama Code 1975, § 27–2–11.

The attorney general is a constitutional officer elected independently from the Governor. Like the Governor and his department heads, the attorney general is responsible for protecting the State's interest. The potential for conflict has been recognized by the courts in other states:

"The constitutional independence of these offices (Governor and Attorney General) and their differing functions and duties, create clear potential for conflict between their respective holders. In the event of such conflict, power in the attorney general to resolve, without their consent, controversies involving agencies or departments under the supervision of the Governor, could be abused by exercise in a manner derogative of the Governor's constitutional duties to exercise executive power and to supervise the official conduct of all executive officers."

*Tice v. Department of Transportation,* 67 N.C.App. 48, 312 S.E.2d 241, 245 (1984).

In Arizona, as in Alabama, both the Governor and the attorney general are independent constitutional officers. The Arizona constitution provides that the governor "shall take care that the laws are faithfully executed" and provides that "the powers and duties of the Attorney General, shall be as prescribed by law." In *Arizona State Land Department v. McFate,* 87 Ariz. 139, 348 P.2d 912, 918 (1960), the Supreme Court of Arizona, in denying the attorney general's standing to initiate certain proceedings without the governor's approval, wrote:

"Thus, the Governor alone, and not the Attorney General, is responsible for the supervision of the executive departments and is obligated and empowered to protect the interest of the people and the State by taking care that the laws are faithfully executed."

It is clear to me that under our constitutional and statutory scheme, the Governor alone, and not the attorney general, is responsible for supervising the state's executive departments and agencies and is obligated and empowered to protect the interest of the people of the State by taking care that the laws are faithfully executed.

When considered in the light of the Governor's constitutional mandate, the seemingly broad power granted to the attorney general by § 36-15-21 to direct and control litigation is clearly restricted. To give the section the broad construction that the majority gives it clearly puts § 36-15-21 at

odds with §§ 113 and 120 of our Constitution, for it allows the attorney general's statutory or even common law power (if such was not "altered or repealed" by § 36-15-21, see Ala.Code 1975, § 1-3-1) to detract or take away from the Governor's *"supreme executive power."* (Emphasis added.) When a statute is susceptible to two constructions, and one would render it unconstitutional while the other would not, we must give the statute the construction that would make it constitutional. *Whitson v. Baker,* 463 So.2d 146 (Ala.1985).

In my opinion, the phrase "[a]ll litigation concerning the interest of the State, or any department thereof, shall be under the direction and control of the attorney general" does not vest in the attorney general the authority to make substantive policy decisions concerning matters in litigation.

From time to time, Governors have intervened in cases in which they thought the public interest was involved and was not being adequately protected. See *Continental Telephone Co. of the South v. Alabama Public Service Commission,* 479 So.2d 1195 (Ala.1985); *General Telephone Co. of the Southeast v. Alabama Public Service Commission,* 356 So.2d 612 (Ala. 1978); *Alabama Public Service Commission v. South Central Bell Telephone Co.,* 348 So.2d 443 (Ala.1977); *Alabama Gas Corp. v. Wallace,* 293 Ala. 594, 308 So.2d 674 (1975); *State v. Alabama Public Service Commission,* 293 Ala. 553, 307 So.2d 521 (1975). Under the majority opinion, does the attorney general, by his authority to direct and control litigation involving the State's interest, have authority to dismiss the intervention of the Governor, the supreme executive?

Recently, this Court issued its writ of certiorari without being requested to do so by the attorney general or anyone else. *White v. Reynolds Metals Co.,* 558 So.2d 373 (Ala.1989). *White* involved millions of dollars of State funds (franchise tax on corporations that were incorporated in states other than Alabama). Under the majority opinion, would the attorney general, by his authority to direct and control litigation involving the State's interest,

have the right to prevent this Court from issuing its writ of certiorari in litigation involving the State's interest?

The Legislature has designated that the substantive policy decisions in the underlying matters in litigation are the responsibility of another member of the executive department. The power to direct and control normally gives the attorney general the authority to decide what is and what is not worth taking to court or defending there and what is or what is not to be appealed, and the executive official involved should normally yield to the judgment of the attorney general so that the State may speak to the courts in a consistent and coherent manner. However, the attorney general's right to manage litigation must end when it interferes with a State agency's authority and duty to enforce substantive matters relating to its legislative purpose. When this happens, I would adopt the position of the Mississippi Supreme Court:

> "The unique position of the Attorney General requires that when his views differ from or he finds himself at odds with an agency, then he must allow the assigned counsel or a specially appointed counsel to represent the agency unfettered and uninfluenced by the Attorney General's personal opinion. If the public interest is involved, [the Attorney General] may intervene to protect it."

*State v. Mississippi Public Service Commission,* 418 So.2d 779, 784 (Miss.1982).

This case is distinguishable from *State ex rel. Carmichael v. Jones,* 252 Ala. 479, 41 So.2d 280 (1949). This Court in *Carmichael* held that a statute that allowed the Department of Revenue to hire special outside counsel and provided that such counsel could not dismiss a case without the approval of the Department of Revenue, did not apply to the settlement of a case referred to and handled by the attorney general, where the record showed that "there was a bona fide dispute as to the law and to the facts governing a determination of the amount due." 252 Ala. at 482, 41 So.2d at 282. The holding in *Carmichael* was that the State's senior lawyer, rather than

"another executive head, not necessarily learned in the law," was the appropriate person to weigh the merits of the case with the law and facts in dispute, consider the risks of litigation, and assess whether the State's interest would be better served by proceeding to trial for a claim of $2,591.50 or accepting a settlement of $1,587.50. In *Carmichael,* the revenue commissioner relied on § 100 of the Constitution, which provides, in pertinent part:

> "No obligation or liability of any person, association, or corporation held or owned by the State ... shall ... be extinguished except by payment thereof;
> ..."

The Court in *Carmichael* found that there had been no final assessment fixing an amount due, and, therefore, that § 100 of the Constitution did not apply to that particular case. The revenue commissioner also relied on the following provision of Tit. 51, § 139, Code of Ala.1940 (now Ala.Code 1975, § 40–2–66):

> "No case pending before a court affecting the revenue laws of the State shall be dismissed by counsel representing the State, whether specifically employed counsel or otherwise, except by order of the Department of Revenue."

The Court held that this provision applied to the dismissal of pending cases by specially employed counsel and did not and was not intended to apply to the attorney general.

The broader constitutional or policy issues that have been raised in the case at issue were not raised in *Carmichael.* Therefore, the broad language in *Carmichael* is dictum and is not binding on this Court. In *Carmichael,* this Court left the door open for future cases by "pretermitting any question of bad faith" on the part of the attorney general, because that issue was not raised. Likewise, in qualifying its rather broad recognition of the power in the attorney general to act on the State's behalf, with the phrase "[unless] inhibited by organic law," i.e., constitutional constraints which were obviously not urged on the Court in the *Carmichael* case, this Court acknowledged that there could be

constitutional restrictions on the attorney general's power to "direct and control" litigation. 252 Ala. at 485, 41 So.2d at 285.

The attorney general's action was "inhibited by organic law" in regard to the case at issue; therefore, on this ground I can also distinguish this case from *Carmichael*.

*Carmichael* should have no precedential effect on this Court's decision in this case; therefore, I would adopt the position of the Supreme Court of Mississippi, which I find to be a fair rule, a reasonable rule, a practical rule, a rule grounded in the well-defined boundaries of the attorney/client relationship, and, most importantly, the rule that conforms to the Alabama Constitution. By adopting this rule, we would allow competing views held by independent constitutional officers concerning what is in the best interest of the State to get a full and fair hearing and would place the dispute in the hands of an independent judiciary for decision rather than having one independent officer of the executive branch impose his will on another. The right rule for this case, and the right rule for this State, is as follows:

> "The unique position of the Attorney General requires that when his views differ from or he finds himself at odds with an agency, then he must allow the assigned counsel or specially appointed counsel to represent the agency unfettered and uninfluenced by the Attorney General's personal opinion. If the public's interest is involved, he may intervene to protect it."

*State v. Mississippi Public Service Commission*, supra, at 784.

STEAGALL, Justice (dissenting).

The Governor is the highest constitutional officer in this state. Our Constitution provides that "the supreme executive power of this state shall be vested in a chief magistrate, who shall be styled 'the Governor of the state of Alabama.'" Article V, § 113, Alabama Constitution of 1901. "The Governor shall take care that the laws be faithfully executed." Article V, § 120.

I believe that this Court would be correct and wise to allow the Governor to make important executive decisions affecting the lives and health of our citizens. Indeed, this is required by our Constitution.

This view is not inconsistent with the right of the attorney general to intervene in a case when he disagrees with the action of a state agency. The Supreme Court of Mississippi stated this position in *State ex rel. Allain v. Mississippi Public Service Comm'n*, 418 So.2d 779, 784 (Miss.1982):

> "The unique position of the Attorney General requires that when his views differ from or he finds himself at odds with an agency, then he must allow the assigned counsel or specially appointed counsel to represent the agency unfettered and uninfluenced by the Attorney General's personal opinion. If the public interest is involved, he may intervene to protect it."

I think this position is practical and is in the best interests of all the people of this state. I, therefore, respectfully dissent.

MADDOX, J., concurs.



## BANCBOSTON MORTGAGE CORPORATION

v.

## GOBBLE–FITE LUMBER COMPANY, INC.

### 89–1222.

Supreme Court of Alabama.

Oct. 19, 1990.

Appeal from Circuit Court, Madison County, No. CV–88–2045–Y, Thomas N. Younger, Judge.

Alicia J. Putt of Smyer, White & Putt. Birmingham, for appellant.

# ARTICLE 4.

## SEXUAL OFFENSES.

**Collateral references.**
Admissibility in prosecution for sex offense of evidence of victim's sexual activity after the offense. 81 ALR4th 1076.

## § 13A-6-60. Definitions.

The following definitions apply in this article:

(1) SEXUAL INTERCOURSE. Such term has its ordinary meaning and occurs upon any penetration, however slight; emission is not required.

(2) DEVIATE SEXUAL INTERCOURSE. Any act of sexual gratification between persons not married to each other involving the sex organs of one person and the mouth or anus of another.

(3) SEXUAL CONTACT. Any touching of the sexual or other intimate parts of a person not married to the actor, done for the purpose of gratifying the sexual desire of either party.

(4) FEMALE. Any female person.

(5) MENTALLY DEFECTIVE. Such term means that a person suffers from a mental disease or defect which renders him incapable of appraising the nature of his conduct.

(6) MENTALLY INCAPACITATED. Such term means that a person is rendered temporarily incapable of appraising or controlling his conduct owing to the influence of a narcotic or intoxicating substance administered to him without his consent, or to any other incapacitating act committed upon him without his consent.

(7) PHYSICALLY HELPLESS. Such term means that a person is unconscious or for any other reason is physically unable to communicate unwillingness to an act.

(8) FORCIBLE COMPULSION. Physical force that overcomes earnest resistance or a threat, express or implied, that places a person in fear of immediate death or serious physical injury to himself or another person. (Acts 1977, No. 607, p. 812, § 2301; Acts 1988, No. 88-339, p. 515.)

**"Earnest resistance"** is a relative term, and among the factors to be considered in determining its existence are the relative strength of the parties, the age of the female, her physical and mental condition, and the nature and degree of the force used by the assailant. Resistance may appear to be useless, and may eventually prove to be unavailing, but there must have been a genuine physical effort on the part of the complainant to discourage and to prevent her assailant from accomplishing his intended purpose. Richards v. State, 475 So. 2d 893 (Ala. Crim. App. 1985).

**Penetration is not an element of sodomy under subdivision (2).** Wade v. State, 453 So. 2d 1072 (Ala. Crim. App. 1984).

**Sexual gratification is not an element of sodomy.** — Appellant's argument that sexual gratification is an element of the offense of sodomy is without merit. A close reading of the statute reveals that the legislature intended for the act itself to be condemned. Sexual gratification is merely a definitional component of the crime and not an essential element which must be proved at trial. Even if such was an essential element of the crime, proof of such may be inferred by the jury from the act itself. Mitchell v. State, 473 So. 2591 (Ala. Crim. App. 1985).

**The element of forcible compulsion for both first-degree rape and sexual misconduct is identical.** Burgess v. State, 462 So. 2d

157

EXHIBIT "D"

Case 2:93-cv-01178-MHT-CSC   Document 37   Filed 05/24/94   Page 30 of 34

## § 13A-6-63. Sodomy in the first degree.

(a) A person commits the crime of sodomy in the first degree if:

(1) He engages in deviate sexual intercourse with another person by forcible compulsion; or

(2) He engages in deviate sexual intercourse with a person who is incapable of consent by reason of being physically helpless or mentally incapacitated; or

(3) He, being 16 years old or older, engages in deviate sexual intercourse with a person who is less than 12 years old.

(b) Sodomy in the first degree is a Class A felony. (Acts 1977, No. 607, p. 812, § 2315.)

I. General Consideration.
II. Decisions Under Prior Law.

### I. GENERAL CONSIDERATION.

**Cross references.** — See Commentary following § 13A-6-64. As to consent generally, see § 13A-2-7. As to lack of consent as element of sodomy, see § 13A-6-70.

**Cited** in Showers v. State, 407 So. 2d 167 (Ala. Crim. App. 1981); Showers v. State, 407 So. 2d 169 (Ala. 1981); Barksdale v. State, 410 So. 2d 484 (Ala. Crim. App. 1982).

**Collateral references.** — 81 C.J.S., Sodomy, §§ 1-8.

70 Am. Jur. 2d, Sodomy, § 1 et seq.

Admissibility, in prosecution for sexual offense, of evidence of other similar offenses. 167 ALR 565, 77 ALR2d 841.

Entrapment to commit offense of sodomy. 52 ALR2d 1194.

Assault with intent to commit unnatural sex act upon minor as affected by latter's consent. 65 ALR2d 748.

Consent as defense for prosecution for sodomy. 58 ALR3d 636.

### II. DECISIONS UNDER PRIOR LAW.

**Editor's note.** — In light of the similarity of the provisions, decisions under former § 13-1-110 are included in the annotations for this section.

**This section includes all carnal copulation.** — This section is broad enough in its terms to embrace all unnatural carnal copulations, whether with man or beast. Woods v. State, 10 Ala. App. 96, 64 So. 508 (1914); Parris v. State, 43 Ala. App. 351, 190 So. 2d 564 (1966).

This section is broad enough to include an averment that defendant against the order of nature carnally knew a female. Brown v. State, 32 Ala. App. 131, 22 So. 2d 445 (1945); Parris v. State, 43 Ala. App. 351, 190 So. 2d 564 (1966).

This section embraces all unnatural carnal copulations, whether with man or beast.

Boyington v. State, 45 Ala. App. 176, 227 So. 2d 807 (1969).

This section includes sodomy and bestiality and is broader in scope than both combined. Parris v. State, 43 Ala. App. 351, 190 So. 2d 564 (1966).

A crime that consists of sexual relations between persons of the same sex, or with beasts, or between persons of different sex in an unnatural manner, whether denominated specifically as sodomy, buggery, bestiality, cunnilingus or otherwise, or whether described generally as a crime against nature, involves moral turpitude. Williams v. State, 55 Ala. App. 436, 316 So. 2d 362 (1975).

**One may be convicted of an attempt.** — In view of former § 13-9-3 allowing a conviction for an attempt to commit an offense, a conviction may be had for attempt to commit an offense denounced by this section. Tarrant v. State, 12 Ala. App. 172, 67 So. 626 (1915).

**Indictment in language of section is sufficient.** — An indictment, in the language of this section, is sufficient to apprise the accused of the charge against him, and is not defective. Boyington v. State, 45 Ala. App. 176, 227 So. 2d 807 (1969).

**It is sufficient merely to charge accused with crime of "sodomy,"** or of "the crime against nature," the crime being too well-known and too disgusting to require other definition or further details or description. Boyington v. State, 45 Ala. App. 176, 227 So. 2d 807 (1969); Horn v. State, 49 Ala. App. 489, 273 So. 2d 249 (1973).

Sodomy as used in connection with statutes prohibiting the crime against nature is interpreted in its broad sense and held to include all acts of unnatural copulation with mankind or beast. Boyington v. State, 45 Ala. App. 176, 227 So. 2d 807 (1969).

EXHIBIT "E"

**offense charge on sexual misconduct.** —
Evidence did not support verdict of sexual
misconduct and therefore trial court properly
declined to give lesser included offense charge
on sexual misconduct in trial for rape in first
degree and sodomy in first degree. Evidence
supported finding that victim was threatened
by defendant to extent she believed serious
physical injury would ensue if she resisted.
Defendant twisted victim's arm behind her
back to control her movements and defendant
threatened to use a curling iron on victim if
she did not stop crying. Ayers v. State, 594 So.
2d 719 (Ala. Crim. App. 1991).

There was no reasonable theory to support
giving an instruction on lesser included offense
of sexual misconduct in prosecution of rape in
the first degree and sodomy in the first degree
where the evidence tended to show that defen-
dant held a knife to victim's neck, cut her
clothes off her body, slapped her, threatened to
cut her heart out and her head off, and forced
her to have sexual intercourse and oral sex
with him. Sartin v. State, 615 So. 2d 135 (Ala.
Crim. App. 1992).

**Jury verdicts not mutually exclusive.** —
Jury's verdicts, finding defendant not guilty of
burglary in the first degree, but guilty of rape
and sodomy in the first degree, were not
mutually exclusive; the jury could have rea-
sonably found that the appellant did not break
and enter the victim's home when he commit-
ted the offenses of rape and sodomy. Perry v.
State, 568 So. 2d 873 (Ala. Crim. App. 1990).

**No requirement that violations be com-
bined into one violation.** — There is no
language in this section charging that the
violations of this offense must be combined into
one violation where they were close in time.
Madden v. State, 602 So. 2d 1193 (Ala. Crim.
App. 1991).

**Venue argument rendered moot.** — Ap-
pellant's argument that the prosecution failed
to prove the venue of the sodomy offense was
rendered moot by the reversal of his sodomy
conviction on another ground. Sparrow v.
State, 606 So. 2d 219 (Ala. Crim. App. 1992).

**Defendant waived right to appeal.** —
Defendant, who fled after being convicted of
rape and sodomy, but before sentencing,
waived his right to appeal from the convictions
and his appeal was properly dismissed. Subel
v. State, 567 So. 2d 404 (Ala. Crim. App. 1990).

Cited in Rowe v. State, 421 So. 2d 1352 (Ala.
Crim. App. 1982); Snow v. State, 423 So. 2d
220 (Ala. 1982); Brown v. State, 437 So. 2d 624
(Ala. Crim. App. 1983); Cole v. State, 443 So.
2d 1386 (Ala. Crim. App. 1983); Wynn v. State,
480 So. 2d 1 (Ala. Crim. App. 1983); Darrow v.
State, 451 So. 2d 394 (Ala. Crim. App. 1984);
Patterson v. State, 455 So. 2d 284 (Ala. Crim.
App. 1984); Richardson v. State, 456 So. 2d
1152 (Ala. Crim. App. 1984); Seritt v. Ala-
bama, 731 F.2d 728 (11th Cir. 1984); Mosley v.
State, 461 So. 2d 34 (Ala. Crim. App. 1984);
Ballard v. State, 461 So. 2d 899 (Ala. Crim.
App. 1984); Clark v. State, 462 So. 2d 743 (Ala.
Crim. App. 1984); Creel v. State, 462 So. 2d
1042 (Ala. Crim. App. 1984); Fain v. State, 462
So. 2d 1054 (Ala. Crim. App. 1985); Souther-
land v. State, 471 So. 2d 522 (Ala. Crim. App.
1985); Lewis v. State, 488 So. 2d 1362 (Ala.
Crim. App. 1986); Sasser v. State, 494 So. 2d
857 (Ala. Crim. App. 1986); Robinett v. State,
494 So. 2d 952 (Ala. Crim. App. 1986); Kemp v.
State, 516 So. 2d 848 (Ala. Crim. App. 1987);
Burnett v. State, 518 So. 2d 235 (Ala. Crim.
App. 1987); Moates v. State, 545 So. 2d 224
(Ala. Crim. App. 1989); Kirby v. State, 581 So.
2d 1136 (Ala. Crim. App. 1990); Gilland v.
State, 593 So. 2d 158 (Ala. Crim. App. 1991);
Sciscoe v. State, 606 So. 2d 202 (Ala. Crim.
App. 1992); Long v. State, 611 So. 2d 443 (Ala.
Crim. App. 1992).

**Collateral references.**

Validity of statute making sodomy a crimi-
nal offense. 20 ALR4th 1009.

Sufficiency of allegations or evidence of
serious bodily injury to support charge of
aggravated degree of rape, sodomy, or other
sexual abuse. 25 ALR4th 1213.

Modern status of rule regarding necessity for
corroboration of victim's testimony in prosecu-
tion for sexual offense. 31 ALR4th 120.

## § 13A-6-64. Sodomy in the second degree.

(a) A person commits the crime of sodomy in the second degree if:

(1) He, being 16 years old or older, engages in deviate sexual intercourse
with another person less than 16 and more than 12 years old.

(2) He engages in deviate sexual intercourse with a person who is
incapable of consent by reason of being mentally defective.

(b) Sodomy in the second degree is a Class B felony. (Acts 1977, No. 607, p.
812, § 2316; Acts 1979, No. 79-471, p. 862, § 1; Acts 1987, No. 87-607, p. 1056,
§ 3.)

EXHIBIT "F"

by these sectio...s, primarily bestiality in many forms, and acts committed by consenting adults in private, whether heterosexual or homosexual.

Under the original draft deviate conduct between consenting adults was not criminal under this article. It was deemed that such acts are not subject to effective regulation—especially marital relations—and what few prosecutions may result are the product of either the use of vice squad decoys or the anguished cries of vengeful or disgruntled relatives or associates. Too, imprisoning a confirmed homosexual is "a little like throwing Brer Rabbit into the briarpatch." Cravan, C. J. Perkins v. North Carolina, 234 F. Supp. 333 (W.D.N.C. 1964).

No attempt, therefore, was originally made to regulate consensual acts performed in private. But such conduct was included by the legislature, and homosexual conduct is still criminal. See § 13A-6-65(a)(3).

Sections 13A-6-63 and 13A-6-64 are directed toward those acts, sexual in nature, committed on persons without consent, under circumstances where normal sexual intercourse would be considered rape, and they correspond to §§ 13A-6-61 and 13A-6-62 in their degrees and classifications.

Under the original act, mistake or ignorance of the victim's immaturity (less than 16 years of age) or mental deficiency operated as a partial defense; the offense was reduced to a Class A misdemeanor of sexual misconduct, § 13A-6-64(c), but was not a complete defense. (Acts 1977, No. 607, § 2316.) The 1979 legislature deleted this "honest mistake" defense (Acts 1979, No. 471); thus, defendant engages in deviate sexual intercourse with another person 12-16 years of age, or mentally defective, at his peril.

*Cross References:*

Consent, § 13A-6-70.
Deviate sexual intercourse, § 13A-6-60(2).
Forcible compulsion, § 13A-6-60(8).
Mentally defective, § 13A-6-60(5).
Mentally incapacitated, § 13A-6-60(6).
Physically helpless, § 13A-6-60(7).

## § 13A-6-65. Sexual misconduct.

(a) A person commits the crime of sexual misconduct if:

(1) Being a male, he engages in sexual intercourse with a female without her consent, under circumstances other than those covered by sections 13A-6-61 and 13A-6-62; or with her consent where consent was obtained by the use of any fraud or artifice; or

(2) Being a female, she engages in sexual intercourse with a male without his consent; or

(3) He or she engages in deviate sexual intercourse with another person under circumstances other than those covered by sections 13A-6-63 and 13A-6-64. Consent is no defense to a prosecution under this subdivision.

(b) Sexual misconduct is a Class A misdemeanor. (Acts 1977, No. 607, p. 812, § 2318.)

I. General Consideration.
II. Decisions Under Prior Law.

EXHIBIT "G"