UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

FILED

JUN 07 1994

THOMAS C. CAVER, CLERK

GAY LESBIAN BISEXUAL ALLIANCE,   )
                                 )
          Plaintiff,             )
                                 )
     vs.                         )
                                 )
JIMMY EVANS, in his official capacity   )
as Attorney General of the State of     )     Civil Action
Alabama, FREDERICK P. WHIDDON, in his   )     No. 93-T-1178-N
official capacity as President of the   )
University of South Alabama, and DALE   )
T. ADAMS, in his official capacity as   )
Dean of Students of the University of   )
South Alabama,                          )
                                 )
          Defendants.            )

PLAINTIFF'S REPLY BRIEF

Plaintiff Gay Lesbian Bisexual Alliance (GLBA), pursuant to

this Court's Order of May 13, 1994, submits this reply brief in

further support of its constitutional claims against defendants

Jimmy Evans, Frederick P. Whiddon, and Dale T. Adams.   GLBA

challenges Section 16-1-28 of the Alabama Education Code, on its

face and as applied by all three defendants, as a violation of

the First and Fourteenth Amendments, because the law (1)

impermissibly restricts expression and association on the basis

of content and viewpoint; (2) is unduly vague; (3) is vastly

overbroad; and (4), as applied to GLBA and to that group alone,

has been used to restrict expression and association on the basis

of the group's identity and viewpoint, despite the inability of

the defendants to explain how GLBA is even implicated by the

language of the statute and without the defendants providing

## TABLE OF CONTENTS

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . 4

   I.   DEFENDANTS' JOINT PRE-TRIAL BRIEF FOCUSES ON
       CONSTITUTIONAL QUESTIONS AND STANDARDS THAT
       ARE NOT MATERIAL TO THIS CASE . . . . . . . . . . . . 4

   II.  SECTION 16-1-28, ON ITS FACE, UNCONSTITUTIONALLY
       DISCRIMINATES ON THE BASIS OF CONTENT AND VIEWPOINT,
       IS UNCONSTITUTIONALLY VAGUE, AND IS UNCONSTITU-
       TIONALLY OVERBROAD; THE STATUTE SHOULD BE STRUCK DOWN
       AND PERMANENTLY ENJOINED IN ITS ENTIRETY . . . . . 10

   III. DEFENDANTS' APPLICATION OF SECTION 16-1-28 TO
       PLAINTIFF IS ALSO UNCONSTITUTIONAL . . . . . . . . 17

   IV.  DEFENDANTS SHOULD NOT BE GIVEN YET ANOTHER
       OPPORTUNITY TO ATTEMPT TO JUSTIFY SECTION
       16-1-28 AND ITS APPLICATION TO GLBA . . . . . . . . 21

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . 23

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . 24

## TABLE OF AUTHORITIES

CASES:                                                                    Page

Board of Trustees of Leland Stanford Junior University v.
     Sullivan, 773 F. Supp. 472 (D.D.C. 1991) . . . . . . . .  16

Brandenburg v. Ohio, 395 U.S. 444 (1969)  . . . . . . . . . . . 5

Chaplinsky v. New Hampshire, 315 U.S. 568 (1942)  . . . . . . . 8

Church of Scientology Flag Service Org., Inc. v. City of
     Clearwater, 2 F.3d 1514 (11th Cir. 1993) . . . . . . . 13-14

Clean-Up '84 v. Heinrich, 759 F.2d 1511 (11th Cir. 1985) . .  15

Bethel School Dist. No. 403 v. Fraser, 478 U.S. 686 (1986) . . 9

Department of Education v. Lewis, 416 So. 2d 455 (Fl. 1982) . . 2

Doe v. University of Michigan, 721 F. Supp. 852 (E.D.
     Mich. 1989)  . . . . . . . . . . . . . . . . . . . . . 9, 15

FCC v. League of Women Voters, 468 U.S. 364 (1984) . . 10, 16-17

Gay and Lesbian Students Association v. Gohn, 850 F.2d 361
     (8th Cir. 1988)  . . . . . . . . . . . . . . . . . . . .  19

Gay Students Organization of the University of New Hampshire
     v. Bonner, 509 F.2d 652 (1st Cir. 1974)  . . . . . . . . . 8

Gay Student Services v. Texas A & M University, 737 F.2d 1317
     (5th Cir. 1984)  . . . . . . . . . . . . . . . . . . . .  19

Gooding v. Wilson, 405 U.S. 518 (1972)  . . . . . . . . . . .  15

Grayned v. City of Rockford, 408 U.S. 104 (1972)  . . . . . .  15

Hays County Guardian v. Supple, 969 F.2d 111
     (5th Cir. 1992)  . . . . . . . . . . . . . . . . . . . 7, 10

Healy v. James, 408 U.S. 169 (1972) . . . . . . . . . . . 2, 5, 8

Papish v. Board of Curators v. University of Missouri, 410
     U.S. 667 (1973)  . . . . . . . . . . . . . . . . . . . . 9-10

R.A.V. v. City of St. Paul, 505 U.S. ___, 120 L. Ed. 2d 305
     (1992) . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

Regan v. Taxation with Representation of Washington, 461

U.S. 540 (1983) . . . . . . . . . . . . . . . . . . . . . 13

Rust v. Sullivan, 500 U.S. 173, 114 L. Ed. 233 (1991)  15, 16, 17

Sawyer v. Sandstrom, 615 F.2d 311 (5th Cir. 1980) . . . . . . . 5

Simon & Schuster v. Crime Victims Board, 502 U.S. ___,
    116 L. Ed. 2d 476 (1991) . . . . . . . . . . . . . . . . 2, 10

Sweezy v. New Hampshire, 354 U.S. 234 (1957) . . . . . . . . 8-9

United States v. Grace, 461 U.S. 175 (1983) . . . . . . . . . . 7

United States v. O'Brien, 391 U.S. 367 (1968) . . . . . . . . . 6

Widmar v. Vincent, 454 U.S. 263 (1981) . . . . . . . . . . 2, 9


STATUTES:

Ala. Code § 16-1-28 . . . . . . . . . . . . . . . . . . . . . passim

Ala. Code §§ 13A-6-63 to -65 . . . . . . . . . . . . . . . . 11


OTHER AUTHORITY:

Bell & Weinberg, Homosexualities (1974) . . . . . . . . . . 12

Reinisch, The Kinsey Institute New Report on Sex (1990) . . . 12

Rotunda & Nowak, Treatise on Constitutional Law: Substance
    and Procedure, § 20.47 (2d ed. 1992) . . . . . . . . . . . 7

constitutionally-sufficient justification under the compelling
state interest test.

## PRELIMINARY STATEMENT

Rather than addressing the real issues in this case,
Defendants' Joint Pre-Trial Brief erects numerous straw men and
argues against those imaginary targets. Defendants' brief, for
example, totally ignores the dozens of cases upon which
plaintiff's actual claims rest -- ranging from the Supreme
Court's rulings protecting campus group activity in Widmar v.
Vincent, 454 U.S. 263 (1981), and Healy v. James, 408 U.S. 169
(1972); to the Court's clear precedents against content- and
viewpoint-based restrictions on expression, including such cases
as Simon & Schuster v. Crime Victims Board, 502 U.S. ___, 116 L.
Ed. 2d 476 (1991); to the many prior gay student group cases,
collected in footnote 1 of Plaintiff's Brief on the Merits, in
which the equal First Amendment rights of those organizations
have repeatedly been affirmed; to the Florida Supreme Court's
decision in Department of Education v. Lewis, 416 So. 2d 455 (Fl.
1982), which strikes down on federal constitutional grounds a
state law very similar to Section 16-1-28. Not one of these
cases is even referred to, much less undermined, in defendants'
brief.

Likewise, the defendants never provide an explanation of
what Section 16-1-28's various phrases and the statute as a whole
supposedly mean. Defendants, for example, never attempt to

2

define the parameters of "foster[ing]," "promot[ing]," or
"encourag[ing]." Not once in their lengthy memorandum do the
defendants acknowledge Section 16-1-28's references to a
"lifestyle" that is purportedly "prohibited by the sodomy and
sexual misconduct laws" and then attempt to explain what those
references to "lifestyle" might mean. While repeatedly assuming
for purposes of argument that Section 16-1-28 imposes no content-
or viewpoint-based limitations on expression and association,
see, e.g., Defendants' Joint Pre-trial Brief at 45, 52, 55, the
defendants never address how the statute's facial targeting of
groups with particular messages can possibly be interpreted as
content- and viewpoint-neutral. Similarly, defendants repeatedly
state that Section 16-1-28 only limits group activity when the
group is using a public facility or spending public funds, see,
e.g., Defendants' Joint Pre-trial Brief at 45, 50, 55, 57, 58,
78, yet the statute itself is worded to preclude the use of
public facilities or funds by any group that **at any time** conveys
particular messages, even if the group seeks to occupy a public
facility or spend public funds for activities totally unrelated
to the subjects covered by Section 16-1-28.

Thus, by rooting their arguments neither in the text of the
statute nor in the constitutional claims that plaintiff asserts
against them, defendants present this Court with inapposite
authorities and contentions. Point I, below, briefly responds to
defendants' various irrelevant arguments and emphasizes what this
case is not about. Point II reiterates plaintiff's meritorious

3

facial challenges to Section 16-1-28. Point III corrects several errors in defendants' portrayal of their enforcement of that law against GLBA and again summarizes plaintiff's as-applied challenge. Finally, Point IV opposes defendants' effort to have another, post-argument opportunity to brief the constitutional issues that are truly in this case.

## ARGUMENT

I. DEFENDANTS' JOINT PRE-TRIAL BRIEF FOCUSES ON CONSTITUTIONAL QUESTIONS AND STANDARDS THAT ARE NOT MATERIAL TO THIS CASE.

This case does not concern the question of whether consensual sodomy can be criminalized, nor does it involve the question of the constitutionality of any inchoate criminal offense. Cf. Defendants' Joint Pre-trial Brief at 40-44, 54. Contrary to defendants' intimation at page 78 of their brief, GLBA has never asserted a constitutional right to commit sodomy in connection with this litigation. Rather, this case centers on a **civil** statute that restricts the **expressive activities** of "any organization or group that fosters or promotes a lifestyle or actions prohibited by the sodomy and sexual misconduct laws [of Alabama]," Ala. Code § 16-1-28(a), and of any organization that "permit[s] or encourage[s] its members or encourage[s] other persons to engage in any such unlawful acts or provide[s] information or materials that explain how such acts may be engaged in or performed," Ala. Code § 16-1-28(b). See Plaintiff's Brief on the Merits at 10-20 (full analysis of the provisions of Section 16-1-28). Defendants ignore the critical

4

distinction between acts that may be criminalized and expression about those acts, which enjoys full constitutional protection. Even the direct advocacy of law violation, including direct encouragement to violate Alabama's sodomy and sexual misconduct laws, constitutes protected speech under the First Amendment, "except where such advocacy is directed to inciting or producing **imminent** lawless action and is **likely to incite or produce** such action." Brandenburg v. Ohio, 395 U.S. 444 (1969) (emphasis added); see also Plaintiff's Brief on the Merits at 50-51. Defendants further ignore the strength of associational rights under the First Amendment; a group cannot be handicapped in or totally barred from its expressive association simply because one or more of its members may have committed a criminal act. See, e.g., Healy v. James, 408 U.S. at 186 ("'guilt by association'" is "an impermissible basis upon which to deny First Amendment rights"); Sawyer v. Sandstrom, 615 F.2d 311, ___ (5th Cir. 1980) (cannot punish "mere association with an individual known to be in possession of or engaged in the use of narcotics"). In short, this free speech and free association case does not rise or fall depending upon the constitutional validity of Alabama's sodomy and sexual misconduct offenses.

This matter also does not concern government regulation of conduct that has only an incidental impact on speech, cf. Defendants' Joint Pre-trial Brief at 39, 52, 54, or government regulation solely of symbolic conduct, cf. Defendants' Joint Pre-trial Brief at 69-70. Each part of Section 16-1-28 regulates

5

group activity, including "conduct" as well as direct expression, that carries with it a particular message. In contrast, no part of the statute prohibits any acts without reference to a particular meaning. The statute challenged by GLBA is thus much different than the statute at issue in United States v. O'Brien, 391 U.S. 367 (1968), the conduct-as-symbolic-speech case that defendants rely on so heavily. In O'Brien, a man was prosecuted for burning his Selective Service registration certificate; he argued that because he did so to arouse anti-war beliefs in the public, he was protected by the First Amendment and could not be prosecuted under a law that prohibited destruction or mutilation of such certificates. The Supreme Court first emphasized that the statute under which O'Brien was prosecuted "plainly does not abridge free speech on its face ... [it] on its face deals with conduct having no connection with speech." 391 U.S. at 375. The Court then held that even communicative conduct covered by such a statute could be constitutionally punished:

> if [the statute] is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.

391 U.S. at 377. O'Brien fails to help defendants here because, inter alia, Section 16-1-28 on its face deals with constitutionally-protected speech and association, the statute places more than an "incidental restriction on alleged First

6

Amendment freedoms," and the governmental purpose behind Section 16-1-28 is plainly related to the suppression of particular expression.

Nor is Section 16-1-28 properly analyzed as a time, place and manner regulation. Cf. Defendants' Joint Pre-trial Brief at 52. Section 16-1-28 at no point addresses the time and manner of expression or association, and it covers certain First Amendment activity both on and off campus, in public and private facilities. Moreover, the statute does not fall within the "time, place and manner" rubric because it fails the threshold test for that analysis: courts "[f]irst ... seek to determine whether the regulation is in fact an attempt to suppress content[.]" Rotunda & Nowak, Treatise on Constitutional Law: Substance and Procedure, § 20.47 (2d ed. 1992). As defendants themselves concede, see Defendants' Joint Pre-trial Brief at 52, if the government regulation is not content-neutral -- as Section 16-1-28 is not -- then the special constitutional analysis for time, place and manner restrictions cannot apply. See also United States v. Grace, 461 U.S. 175, 177 (1983) (time, place and manner limitations on expression must be content-neutral); Hays County Guardian v. Supple, 969 F.2d 111, 121 (5th Cir. 1992) ("Proper time, place, and manner requirements 'do not discriminate **among speakers** or ideas" and "further an important governmental interest **unrelated to the restriction of communication**.'") (emphasis in original).

Section 16-1-28, in addition, does not aim to restrict fighting words or other totally proscribable speech, such as obscenity; it applies to fully-protected speech and association. Defendants' references to Chaplinsky v. New Hampshire, 315 U.S. 568 (1942), the seminal fighting words case, and to certain paragraphs from R.A.V. v. City of St. Paul, 120 L. Ed. 2d 305, 320-322 (1992), dealing with a state's ability to limit **proscribable** classes of speech, see Defendants' Joint Pre-trial Brief at 57-64, are therefore beside the point. Instead, other portions of R.A.V. are instructive here -- that decision's emphasis, for example, that "[c]ontent-based regulations are presumptively invalid," 120 L. Ed. 2d at 317, and that "[t]he First Amendment does not permit [the government] to impose special prohibitions on those speakers who express views on disfavored subjects," id. at 335.

Finally, expression and association on university campuses are entitled to complete constitutional protection. See Healy v. James, 408 U.S. 169, 180 (1972) ("the precedents of this Court leave no room for the view that ... First Amendment protections should apply with any less force on college campuses than in the community at large"); Gay Students Organization of the University of New Hampshire v. Bonner, 509 F.2d 652, 658 (1st Cir. 1974) ("the First Amendment applies with full vigor on the campuses of state universities"). Indeed, that protection is necessary for colleges to accomplish their educational goals. See Sweezy v. New Hampshire, 354 U.S. 234, 250 (1957) ("[t]he essentiality of

8

freedom in the community of American universities is almost self-evident"); Doe v. University of Michigan, 721 F. Supp. 852, 863 (E.D. Mich. 1989) (general First Amendment "principles acquire a special significance in the university setting, where the free and unfettered interplay of competing views is essential to the institution's educational mission").

Contrary to defendants' contention, see Defendants' Joint Pre-trial Brief at 37-39, less-protective standards designed for the primary and secondary school context, which take into account younger students' lack of maturity and other special needs, are not applicable here. Compare Bethel School Dist. No. 403 v. Fraser, 478 U.S. 686, 683-685 (1986) (stressing difference between adults and "children in public school," vulgar speech's damaging effect upon "less mature audience, many of whom were only 14 years old," and the need for public "school authorities acting in loco parentis to protect children"), with Widmar v. Vincent, 454 U.S. at 274 n.14 ("University students are, of course, young adults. They are less impressionable than younger students"), and Papish v. Board of Curators v. University of Missouri, 410 U.S. 667, 670 (1973) ("We think Healy makes clear that the mere dissemination of ideas--no matter how offensive to good taste--on a state universtiy campus may not be shut off in the name alone of 'conventions of decency.'").

9

II. SECTION 16-1-28, ON ITS FACE, UNCONSTITUTIONALLY
DISCRIMINATES ON THE BASIS OF CONTENT AND VIEWPOINT, IS
UNCONSTITUTIONALLY VAGUE, AND IS UNCONSTITUTIONALLY
OVERBROAD; THE STATUTE SHOULD BE STRUCK DOWN AND PERMANENTLY
ENJOINED IN ITS ENTIRETY.

As noted above and as explained in detail in plaintiff's
initial brief, Section 16-1-28 is a content-based regulation that
is "presumptively invalid." R.A.V., 120 L. Ed. 2d at 317; see
also Simon & Schuster v. Crime Victims Board, 116 L. Ed. 2d at
486-87 (content-based limitations on expression are
"presumptively inconsistent with the First Amendment"); FCC v.
League of Women Voters, 468 U.S. 364, 383-84 (1984) (stressing
First Amendment's hostility to content- and viewpoint-based
regulations). In this case, therefore, the burden is on the
**government** to prove that such a "facially content-based statute
... is '**necessary** to serve the asserted [compelling] interest.'"
R.A.V., 120 L. Ed. 2d at 325-26 (emphasis and inserted word in
original); see also Hays County Guardian v. Supple, 969 F.2d at
116 ("Content-based restrictions must be necessary to serve a
compelling state interest and be narrowly drawn to achieve that
end."). Defendants err in implying, see Defendants' Joint Pre-
trial Brief at 36-37, that some lesser standard, or some required
burden of proof on plaintiff, applies in a facial challenge under
the First Amendment to a content- and viewpoint-based limitation
on expression such as Section 16-1-28.

Defendants have not advanced **any evidence** to attempt to
establish **either** a compelling state interest served by Section
16-1-28 or the narrow tailoring required so as not to

10

unnecessarily limit First Amendment freedoms. In their brief, defendants variously hypothesize that Section 16-1-28 relates to the state's interests in "regulating homosexual misconduct," in "promoting lawful marriage," in "fostering the procreation of children," Defendants' Joint Pre-trial Brief at 54, 72, and in "the prevention of sexually transmitted and other communicable diseases," id. at 72. Yet they provide no record support for a compelling need to further address these interests in the State of Alabama, nor do they even explain how they believe Section 16-1-28 will promote such interests. How, for example, will a statute that limits discussion about certain sexual behaviors help -- rather than hinder -- prevention of sexually transmitted diseases? See Plaintiff's Brief on the Merits at 18-19 (arguing that the forbidden category of expression in Section 16-1-28(b) limits the sharing of advice and materials about prevention of sexually-transmitted diseases). How will a regulation of expressive association that "fosters or promotes" certain acts of vaginal intercourse as well as oral or anal intercourse by any couple, heterosexual or homosexual, see Ala. Code §§ 13A-6-63 to -65, have any effect on the rate of marriage or the rate of procreation of children? The sodomy and sexual misconduct referred to in Section 16-1-28, on the one hand, and lawful marriage and procreation, on the other, are not mutually exclusive. Finally, how do the defendants read the language of

11

Section 16-1-28 to focus on "homosexual misconduct"?[1]  Even if

the statute does have such a focus, defendants have provided no

evidence that "homosexual misconduct" is a problem of the gravest

magnitude in Alabama, sufficient to establish a compelling state

interest in curbing it.

Were the state to sufficiently show some compelling (and

legitimate) state goal, defendants' proof would still fail

---

[1]Defendants repeatedly and erroneously argue as if the
statute itself -- distinct from the legislature's motivation in
enacting it -- applies only with regard to "homosexual
misconduct."  See Defendants' Joint Pre-trial Brief at 68 ("By
its very language the statute only applies to organizations or
groups which promote sodomy and homosexual misconduct."); see
also id. at 77 (the interests of the state here "include the
prevention of homosexual criminal misconduct, the promotion of
legal marriage, and the fostering of the procreation of
children").  These arguments are belied by the underlying
criminal statutes that are referred to in Section 16-1-28.  See
Ala. Code §§ 13A-6-63 to -65.  (Defendants' selective reading of
the generally-applicable criminal law, however, it underscores
the viewpoint-based purpose behind the statute issue here, which
defendants' have implicitly adopted in their brief.)

Moreover, defendants lack any support in the record or in
fact for their assertion that "gays and lesbians, by their very
definition, engage in homosexual conduct which is prohibited by
law."  Defendants' Joint Pre-trial Brief at 72; see also id. at
51 (homosexuals are "persons whose sexual practices by their very
definition are criminal!").  A gay or lesbian sexual orientation
does not mean that an individual has participated in any
particular sexual conduct, or indeed in any sexual conduct at
all.  Gay and lesbian couples, moreover, can achieve sexual
satisfaction without engaging in oral or anal sex.  Homosexual
sexual practice -- no more than heterosexual sexual practice --
does not "by definition" render its participants criminal under
the Alabama sodomy and sexual misconduct laws.  See, e.g.,
Reinisch, The Kinsey Institute New Report on Sex 132 (1990)
(various studies conclude that approximately 90% of heterosexual
couples have engaged in oral sex); Bell & Weinberg,
Homosexualities 109 (1974) ("masturbation (of or by their
partner) [is] the form of sexual contact" that lesbians are "most
apt to have experienced [and] also the technique which they most
frequently employ[]").  See also Plaintiff's Brief on the Merits
at 14 n.12, 61 n.58.

12

because Section 16-1-28 cannot possibly be construed as narrowly tailored. See Plaintiff's Brief on the Merits at 57-62. As in Church of Scientology Flag Service Org., Inc. v. City of Clearwater, 2 F.3d 1514, 1547 (11th Cir. 1993), the government here has not "tried to explain why less restrictive alternatives like [the] generally applicable penal laws ... are inadequate to address its asserted interests" related to controlling sodomy and sexual misconduct. "In light of the potent but significantly less intrusive regulatory alternatives," Section 16-1-28 "cannot be characterized as narrowly tailored" and its constitutionality cannot be sustained. Id.

Furthermore, defendants' submission to this Court does not deal with the Alabama legislature's clear, impermissible purpose in actually enacting Section 16-1-28 -- its aim of driving gay and lesbian student groups from Alabama college campuses to silence their perceived message. See Plaintiff's Brief on the Merits at 4-16. Because the record unequivocally establishes this illegitimate government purpose of aiming to suppress "dangerous ideas," Regan v. Taxation with Representation of Washington, 461 U.S. 540, 548 (1983), Section 16-1-28 should be struck down on that basis alone. See Plaintiff's Brief on the Merits at 49-50, 55; see generally Church of Scientology, 2 F.3d at 1529 (summarizing Supreme Court "decisions, which treat the evaluation of governmental purpose in challenges under the First Amendment as identical to the inquiry under the Equal Protection Clause" and which establish "that action by any branch of

13

government may be invalid if the challenger shows the action was ... motivated by purposes offensive to the Free Speech Clause").

In addition to its substantive First Amendment infirmities, Section 16-1-28 is unconstitutional on its face because the statute is impermissibly vague and grossly overbroad. See Plaintiff's Brief on the Merits at 67-74. Despite this statute's extraordinary imprecision -- which all three defendants have themselves underscored in their own record testimony, see id at 28 n.28, 29 n.29, 70-71 (collecting examples) -- defendants' counsel conclusorily argues that Section 16-1-28 "contains defined, fixed, and ascertainable standards" and that only specific "**acts** enumerated in the statute" are forbidden. Defendants Joint Pre-trial Brief at 68 (emphasis in original). The telling flaw in the position taken in defendants' brief is that neither defendants' counsel, nor any of the defendants, nor anyone else has been able to describe the supposed "ascertainable standards" established by Section 16-1-28, or the particular "acts" it allegedly proscribes. On its face, Section 16-1-28 is unconstitutionally vague because it fails to give fair warning of exactly what it prohibits, it does not provide explicit standards for those responsible for its enforcement, and it imposes a great chilling effect on First Amendment activity by those who fear they may somehow be deemed covered by Section 16-1-28's restrictions. See Grayned v. City of Rockford, 408 U.S. 104, 108-09 (1972).

14

The statute is unconstitutionally overbroad because it
unjustifiably restricts a great deal of protected expression and
association, not only by plaintiff but by third parties not
before the Court. See Gooding v. Wilson, 405 U.S. 518, 522
(1972); Clean-Up '84 v. Heinrich, 759 F.2d 1511, 1513 (11th Cir.
1985). In cursorily arguing against plaintiff's overbreadth
claim, defendants posit a test that misstates the constitutional
inquiry. Overbreadth review is not so much concerned with "a
regulation ban[ning] a broad range of speech at a particular
location or under particular circumstances," Defendants' Joint
Pre-trial Brief at 65, but instead assesses whether a significant
amount of protected First Amendment activity is "swept within
[the] ambit" of a regulation that might permissibly restrict some
small segment of the activity it covers. Doe v. University of
Michigan, 721 F. Supp. at 864. Section 16-1-28 is such a grossly
overinclusive limitation on speech and association. See
Plaintiff's Brief on the Merits at 73-74.

Lastly, it must be emphasized that defendants err in
analogizing Section 16-1-28 to the regulations at issue in Rust
v. Sullivan, 500 U.S. 173, 114 L. Ed. 2d 233 (1991). As
discussed at length in plaintiff's opening memorandum, see
Plaintiff's Brief on the Merits at 63-67, the statute challenged
here differs in several material respects from the restrictions
governing the use of federal Title X money, the regulations
challenged in Rust. First, Section 16-1-28 links its
restrictions not only to the direct or indirect use of public

15

funds, but also to the use of public facilities -- including public forums. Rust itself makes clear that its analysis of limitations linked to government grants cannot be transferred to the context of the use of government facilities. See 114 L. Ed. 2d at 259-60. Second, Section 16-1-28 crosses the line to impose unconstitutional conditions by denying an organization or group a government benefit (public funds or the use of public facilities) based upon the group's protected First Amendment activity at any time; it does not, in contrast to the regulations at issue in Rust, bind a recipient of the public benefit only when the recipient is using that benefit. Under the guise of its spending power, the government cannot, consistent with the First Amendment, "broadly forbid[] the recipients of the funds from engaging in [particular speech] at any time, under any auspices, and wholly apart from the particular program that is being aided" with a government grant. Board of Trustees of Leland Stanford Junior University v. Sullivan, 773 F. Supp. 472, 476 (D.D.C. 1991); see also Rust, 114 L. Ed. 2d at 257-58.

Third, the university setting targeted by Section 16-1-28 makes its limitations on free expression harder to justify than were the family planning program limitations in Rust. See Rust, 114 L. Ed. 2d at 260; Stanford v. Sullivan, 773 F. Supp. at 476-78. And fourth, the use of public funds cannot be restricted to serve the goal of suppressing a particular viewpoint. See FCC v. League of Women Voters, 468 U.S. 364 (1984); Rust, 114 L. Ed. 2d

16

at 256. The overtly viewpoint-based nature of Section 16-1-28 dooms any comparison to Rust on that ground alone.

In sum, under either an unconstitutional conditions analysis, see Plaintiff's Brief on the Merits at 63-67, or under the basic compelling state interest test, see id. at 45-62, Section 16-1-28 runs afoul of well-settled First Amendment principles. This enactment is also unconstitutionally vague and overinclusive. Any one of those deficiencies demands that the law be ruled facially invalid and that its enforcement be forever enjoined.

## III. DEFENDANTS' APPLICATION OF SECTION 16-1-28 TO PLAINTIFF IS ALSO UNCONSTITUTIONAL.

The Attorney General has ruled that GLBA is covered by the restrictions of Section 16-1-28(a) and therefore ineligible for public funding through the USA Student Government Association (SGA). JR I 0210-11 (July 29, 1993, opinion letter).[2] Defendants Whidden and Adams have used Section 16-1-28 to deny GLBA the effective use of an on-campus bank account, to bar the dispersement of SGA funding to that group, to organize a fact-

_____

[2]Section 16-1-28 cannot logically be read to distinguish between groups covered for purposes of funding, but not covered for purposes of the use of public facilities or for purposes of a university "sanction[ing]" or "recogniz[ing]" the group. Thus, under the Attorney General's opinion, full enforcement of Section 16-1-28 would result in the banishment of GLBA from the University of South Alabama. While defendants' err in asserting that plaintiff claims that this has already happened, see, e.g., Defendants' Joint Pre-trial Brief at 3, 35, it is indisputable that this outcome is required by the language of the statute if Section 16-1-28 indeed applies to GLBA.

17

finding investigation of GLBA's activities, and to stigmatize

GLBA, uniquely, as a second-class student organization at USA.

See Plaintiff's Brief on the Merits at 20-44 (summarizing and

citing to record evidence of enforcement of Section 16-1-28

against GLBA). This enforcement effort has caused the GLBA,

inter alia, to cancel one slated out-of-town speaker, JR I 0224

(Wilson Dec. ¶ 33), to refer another speaker to Jaguar

Productions for its sponsorship rather than the GLBA's (with the

concomitant "balance" that JP requires), JR I 0226 (Wilson Dec. ¶

39), Adams Dep. 90, and to lose membership, JR I 0216 (Wilson

Dec. ¶ 14). Moreover, the two-year history of GLBA's suffering

under Section 16-1-28 all stems from defendants' targeting of

that organization simply because it is a gay and lesbian student

group and a controversy about a similar group led to the passage

of the statute. See Plaintiff's Brief on the Merits at 28-29

(collecting support in the record). Indeed, defendants have

pointed to no record evidence that might provide a factual

foundation for GLBA's coverage under the literal language of

Section 16-1-28.

Thus, all three defendants have employed Section 16-1-28 to

interfere with GLBA's freedom of expression and freedom of

association, harming that organization significantly. Their

decisions to penalize GLBA under that statute have all rested on

a viewpoint basis -- singling out only the one gay and lesbian

student group at USA on the basis of that group's identity as

such. Defendants' use of Section 16-1-28 to disadvantage GLBA,

18

therefore, must be subjected to the same strict scrutiny as plaintiff's facial claim. See Gay Student Services v. Texas A & M University, 737 F.2d 1317, 1332 (5th Cir. 1984) (if government regulation "functioned to 'discourage one viewpoint and advance another,' strict scrutiny would apply 'regardless of whether a public forum [was] involved'"); Gay and Lesbian Students Association v. Gohn, 850 F.2d 361, 366-68 (8th Cir. 1988) (applying compelling state interest test to student group funding policy that disadvantaged lesbian and gay student group).

Defendants' showing on the as-applied claim is even weaker than on the facial challenge. Whereas defendants' brief speculates about purported state interests that might be served by Section 16-1-28 in general, it provides no argument -- let alone evidence -- to connect the proffered state interests to the activities of GLBA. For example, defendants put forth the interest of preventing violations of Alabama's sodomy and sexual misconduct offenses, yet they never explain what GLBA does to allegedly bring about such violations. Defendants' brief concedes that the only relevant record evidence shows that GLBA has "not advocated violation of Alabama's criminal sodomy statutes." Defendants' Joint Pre-trial Brief at 16-17. Similarly, defendants allude to the government interests of preventing sexually-transmitted diseases, promoting marriage, and fostering the procreation of children -- yet they provide no connection between GLBA's history or plans as a campus student group and any negative impact on those state interests.

19

Defendants certainly have not provided evidence of a **compelling** state need to limit GLBA's expressive and associational activity, nor have they shown that their actions toward the group are narrowly tailored to best preserve First Amendment freedoms.

Instead of attempting to justify their manifest interference with GLBA's free speech and free association rights, defendants seem to be trying to establish that no harm to GLBA has occurred. Defendants' brief, for example, stresses that there is "absolutely no evidence ... of threats [of] physical violence ... or of actual violence" in this case, Defendants' Joint Pre-trial Brief at 34, ignoring the fact that this case is about First Amendment violations, not criminal assaults or torts. In outlining the facts of Section 16-1-28's enforcement at USA, defendants largely corroborate plaintiff's version of events, but at crucial junctures of harm, defendants' leave out or distort important aspects of the record. Compare Defendants' Joint Pre-trial Brief at 20 (leaving out Dean Adams' retreat on simply granting GLBA a bank account); 26 (erroneously implying that GLBA could have been reimbursed for Winter 1993 speaker's budget that was tabled by the SGA); 28 (erroneously implying that GLBA's asserted paperwork failure caused it to have to cancel Spring 1993 speaker); with Plaintiff's Brief on the Merits at 30-31 (citing evidence of unique use of Section 16-1-28 to deny GLBA use of bank account); 34-36 (citing evidence of tabled of request and university position that GLBA could not receive SGA funding); 36-39 (summarizing evidence that university's policy against GLBA

20

funding, pending further interpretation of Section 16-1-28, caused cancellation of John Howard speech for GLBA).

Plaintiff is confident that once this Court reviews the actual record evidence cited by the respective parties, the multiple harms suffered by GLBA will be readily apparent. Because those injuries to GLBA's First Amendment rights have not been and cannot be justified by any compelling state interest, plaintiff is entitled to judgment on its as-applied challenge and to an injunction against any further enforcement of Section 16-1-28 to GLBA's detriment.

IV. DEFENDANTS SHOULD NOT BE GIVEN YET ANOTHER OPPORTUNITY TO ATTEMPT TO JUSTIFY SECTION 16-1-28 AND ITS APPLICATION TO GLBA.

Plaintiff realizes that the Court has already denied Defendants' Provisional Joint Motion for Leave of Court to File Supplemental Brief, which was attached to Defendants' Joint Pre-trial Brief. See Order dated May 27, 1994. That ruling, however, leaves open the possibility that defendants might renew their motion at a later date. Id. Plaintiff wishes to emphasize that both the Attorney General's Office and counsel for the USA defendants have been considering the constitutional issues posed by Section 16-1-28 for two years. See, e.g., JR I 0057-0060 (Attorney General's opinion letter dated Mar. 19, 1992); JR II 0328 (July 31, 1992, memorandum from defendant Adams to university attorney, requesting opinion relating to GLBA under Section 16-1-28). Throughout the lengthy process of waiting for

21

various legal opinions and then during the nine months of this litigation, GLBA's activities have been significantly restricted. As every quarter passes, some students graduate from USA and educational opportunities are forever lost. Plaintiff, therefore, underscores the need for resolution of this case as quickly as possible and opposes any supplemental briefing unless new issues, or some other appropriate basis for additional submissions, are raised by this Court. That defendants' counsel have themselves chosen not to address the case law that governs this matter should not be a sufficient basis for giving defendants another briefing opportunity after oral argument. Cf. Defendants' Joint Pre-trial Brief at 76.

## CONCLUSION

For all the foregoing reasons, and for all the reasons stated in Plaintiff's Brief on the Merits, plaintiff asks this Court to find the whole of Section 16-1-28 unconstitutional on its face and to permanently enjoin any further enforcement of that statute. In the alternative, if the Court does not conclude that Section 16-1-28 should be facially invalidated, plaintiff requests that the statute's application to GLBA be found unconstitutional and its future enforcement against that group permanently enjoined.

Dated:   June 7, 1994

Fern Singer
Watterson and Singer
Post Office Box 530412
Birmingham, Alabama 35253
(205) 871-3980
As Cooperating Attorney
   for the ACLU of Alabama

Ruth E. Harlow
William B. Rubenstein
American Civil Liberties
   Union Foundation
132 West 43rd Street
New York, New York 10036
(212) 944-9800, Ext. 545

ATTORNEYS FOR PLAINTIFF

GAY LESBIAN BISEXUAL ALLIANCE, )
)
           Plaintiff, )
)
      vs. )
)
JIMMY EVANS, in his official capacity )
as Attorney General of the State of ) Civil Action
Alabama, FREDERICK P. WHIDDON, in his ) No. 93-T-1178-N
official capacity as President of the )
University of South Alabama, and DALE )
T. ADAMS, in his official capacity as )
Dean of Students of the University of )
South Alabama, )
)
           Defendants. )

## CERTIFICATE OF SERVICE

This is to certify that I have this day served each of

defendants' counsel one copy of the Plaintiff's Reply Brief, via

Federal Express for delivery on June 7, addressed as follows:

> George E. Jones III
> Office of the Attorney General
> Alabama State House
> 11 South Union Street
> Montgomery, AL 36130

> J. Fairley McDonald III
> Copeland, Franco, Screws & Gill
> 444 South Perry Street
> Montgomery, AL 36104

This 6th day of June 1994.

Ruth E. Harlow

24