IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

FILED
FEB 13 1996
CLERK
U. S. DISTRICT COURT
MIDDLE DIST. OF ALA.
MONTGOMERY, ALA.

| | |
|---|---|
| GAY LESBIAN BISEXUAL ALLIANCE, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JEFF SESSIONS, in his official ) <br> capacity as Attorney General ) <br> of the State of Alabama, ) <br> et al., ) <br> ) <br> Defendants. ) | CIVIL ACTION NO. 93-T-1178-N |

ORDER

In a memorandum opinion and declaratory judgment entered on January 29, 1996, this court held that the Alabama public funds and facilities statute, § 16-1-28 of the Alabama Code 1975 (Michie 1995), both facially and as applied, violated the first amendment to the United States Constitution. The statute provides, in part, that "No public funds or public facilities shall be used by any college or university to, directly or indirectly, sanction, recognize, or support the activities or existence of any organization or group that fosters or promotes a lifestyle or actions prohibited by the sodomy and sexual misconduct laws." Ala. Code 1975 § 16-1-28(a). This lawsuit is now before the court on two motions filed by the parties pursuant to Rule 62(c) of the Federal Rules of Civil Procedure (West 1995). Defendant Attorney General Jeff Sessions has moved for a partial stay pending appeal of this court's judgment to the extent that it holds that § 16-1-28 is facially invalid. Plaintiff Gay Lesbian Bisexual Alliance of the University of South Alabama (GLBA-USA) has moved for an

injunction to enforce the court's declaratory judgment. Oral argument was held on the motions on February 12, 1996. For the reasons that follow, the court will deny both motions.

I.

In its January 29 memorandum opinion, the court found that, although the University of South Alabama allows and even encourages a wide variety of student groups to enjoy various benefits at the school, including use of the meeting rooms in the school recreation center, on-campus banking services, and direct university funding through the Student Government Association, these benefits were not fully extended to GLBA-USA. "[A]s a result of the enforcement of § 16-1-28," the court found, GLBA-USA "has been denied on-campus banking facilities, disqualified from receiving funding, and subjected to an intrusive and highly personal fact-finding investigation. In addition, although the university has not prevented GLBA[-USA] from meeting in campus facilities or from being recognized as an official student group, the group is still considered by the Attorney General and university officials as falling within the prohibitions of § 16-1-28 and thus not entitled to use university facilities." _Gay Lesbian Bisexual Alliance v. Sessions_, 1996 WL 42033, *4 (M.D. Ala. Jan. 29, 1996).

The evidence reflected, and the parties essentially agreed, that § 16-1-28 was passed in the wake of the Alabama State Legislature's displeasure with the decision of another State university to allow a group addressing homosexual issues to be

2

formed on campus, and that the intent behind the statute was to prohibit and discourage the formation of such groups on college and university campuses. In issuing a declaratory judgment condemning the statute, the court relied in great part on <u>Rosenberger v. Rector & Visitors of Univ. of Va.</u>, ___ U.S. ___, 115 S. Ct. 2510 (1995). In that case, the Supreme Court held that, having made facilities and funds available to varied and differing student organizations "to convey their own messages, the University may not silence the expression of selected viewpoints." <u>Id.</u> at ___, 115 S. Ct. at 2519. The Court refused to draw a distinction between the application of the first amendment to public funds and public facilities. A fund "is a forum more in a metaphysical than in a spatial or geographic sense, but the same principles are applicable." <u>Id.</u> at ___, 115 S. Ct. at 2517. Although GLBA-USA had requested an injunction to enforce the declaratory judgment, the court did not issue one, but rather retained jurisdiction to enter an injunction if that became necessary.

New evidence before the court reflects that on February 16 and 17, 1996, the Fifth Annual Lesbian, Gay and Bisexual College Conference of the Southeastern United States will be hosted at the University of Alabama at Tuscaloosa. The conference is sponsored by the Gay Lesbian Bisexual Alliance of the University of Alabama (GLBA-UA). The conference has been held on the campus of Vanderbilt University for the last four years; student organizers decided to give another group the chance to host it in 1996, and past attendees from GLBA-UA chose to take on the project and began

3

organizing it in March 1995. The conference is an educational event, with a wide variety of seminars and speakers planned on topics including lesbian, gay and bisexual Southern history; AIDS research and vaccines; hate crimes; cultural sensitivity in law enforcement; and an interfaith discussion on lesbian, gay and bisexual issues. The conference aims to provide a forum for homosexual, bisexual and heterosexual people to discuss their lives, their history, and social and political issues. The GLBA-UA has sought a university setting in order to reflect the conference's "academic, thoughtful approach to controversial issues."[1]

In preparing for the conference, GLBA-UA has complied with all of the University of Alabama's rules and regulations, and the university administration supports of the event. Over 100 student groups in the Southeast have been invited to attend. Students from GLBA-USA of the University of South Alabama will be attending the conference.

In his motion for a partial stay, the State Attorney General requested that the court stay its January 29 judgment to the extent that it declared § 16-1-28 facially invalid. He contended that holding the conference would violate § 16-1-28, stating that "the State of Alabama will experience irreparable harm by funding a conference and activities in violation of state law." At oral argument on the motion, however, the Attorney General stated that he did not seek to stop the conference but rather seeks "to have

---

1. Declaration of Catherine Lopez Wessell at 5.

4

the statute available should a violation occur at the upcoming conference."[2]  He said he was particularly concerned about a "session" that would deal with "safe sex" and "sexually transmitted diseases."[3]  He said he could forsee no problem with that session only if it "could be presented in a way that would not violate the statute."[4]

In its motion for an injunction to enforce the court's declaratory judgment, GLBA-USA contends that the injunction is needed because the Attorney General is continuing to use the statute to target gay and lesbian university groups, including GLBA-USA, and that he is seeking to stop the conference at the University of Alabama.

II.

A stay under Rule 62(c) is considered "extraordinary relief" for which the moving party bears a "heavy burden."  Winston-Salem/Forsyth County Bd. of Educ. v. Scott, 404 U.S. 1221, 1231, 92 S. Ct. 1236, 1241 (Burger, C.J., in chambers).  In determining whether to grant a stay pending resolution of an appeal, the court must examine the following factors:  (1) whether the applicants have made a strong showing that they are likely to prevail; (2) whether the applicants will be irreparably injured if a stay is not granted; (3) whether granting the stay will substantially injure

---

2. Transcript of oral argument on February 12, 1996, at 4.

3. Id. at 6.

4. Id.

the other parties interested in the proceeding; and (4) where the public interest lies. Hilton v. Braunskill, 481 U.S. 770, 776, 107 S. Ct. 2113, 2119 (1987); United States v. Bogle, 855 F.2d 707, 708 (11th Cir. 1988).  The Attorney General contends that this court should apply a different standard regarding the merits of his appeal.  Under the standard outlined in Garcia-Mir v. Meese, 781 F.2d 1450 (11th Cir. 1986), the court may grant a stay if the movant shows only "a substantial case" on the merits, rather than a likelihood that he will prevail, if the other three factors weigh heavily toward granting the stay.  Id. at 1453.  Under either standard, the Attorney General has not made an adequate showing regarding the merits of his appeal.

First Factor:  Likelihood of Prevailing on Appeal.  The Attorney General contends that the court's holding that § 16-1-28 is facially unconstitutional was unnecessary and that the court's declaration of invalidity should have been limited to the statute "as applied" to GLBA-USA.  The court rejects this argument for several reasons.  First, as the court explained in its January 29 memorandum opinion, § 16-1-28 is facially invalid.  "The statute prohibits only those groups that 'foster' and 'promote' a 'lifestyle or actions prohibited by the sodomy and misconduct laws' from using public funds and facilities; groups that 'oppose' such 'lifestyle or actions' would not fall within its prohibition.  Thus, a student organization that sought to sponsor a debate on the morality of various types of sexual conduct could risk being barred from using campus facilities because the debate could include the

view that certain sexual conduct, including conduct prohibited by the State's sexual misconduct laws, is moral. On the other hand, a group that sought to invite someone to speak solely on the immorality of such conduct would not run that risk. The statute is therefore limited in application to restricting only the viewpoint of those who foster and promote the prohibited 'lifestyle or actions.' This is naked viewpoint discrimination." Gay Lesbian Bisexual Alliance v. Sessions, 1996 WL 42033 at *5. Moreover, as the court stated, the statute was intended to prohibit and discourage the formation on college and university campuses of groups addressing homosexual issues. The statute was, therefore, intended "to limit the sexuality discussion in institutions of higher learning to only one viewpoint: that of heterosexual people." Id. A "facially content-based statute," such as § 16-1-28, is obviously facially invalid. See, e.g., R.A.V. v. City of St. Paul, 505 U.S. 377, 393, 112 S. Ct. 2538, 2548 (1992) (holding that a facially content-based statute was facially invalid); Simon & Schuster v. New York State Crime Victims Bd., 502 U.S. 105, 112 S. Ct. 501 (1991).

In any event, even if the court were to limit its holding to § 16-1-28 as applied, the manner in which the Attorney General seeks to apply it pending appeal would still be invalid. He seeks to apply the statute to ensure that discussions at the conference about "safe sex" and the prevention of "sexually transmitted diseases" are "presented in a way that would not violate the

statute."[5] This is not the first time the court has addressed this argument. At oral argument on the initial submission of the case on the merits, the Attorney General argued that the State does not seek to ban discussion about sexually transmitted diseases; rather, it only seeks to limit how such diseases may be discussed. The court responded that this application of the statute was "an attempt[] to dictate the information, and even the actual words, that may not be used to convey an idea or belief. This too is viewpoint discrimination. A viewpoint may include not only _what_ a person says but _how_ she says it." Gay Lesbian Bisexual Alliance v. Sessions, 1996 WL 42033 at *5. The State may not "impose its viewpoint on how the discussion may proceed." Id.

The Attorney General contends that a group which violated the state criminal statutes, including its inchoate statutes (for example, Ala. Code 1975 § 13A-4-1 (Michie 1994) (criminal solicitation), § 13A-4-2 (attempt), § 13A-4-3 (criminal conspiracy)), should not be entitled to any state support, either through public funding or use of state facilities. The court agrees with this contention, and its January 29 judgment should not be interpreted otherwise. But § 16-1-28 is not an inchoate statute.[6] As the court stated in it January 29 opinion, "[I]t

---

5. Id.

6. Even if § 16-1-28 were narrowly construed to prohibit funding of only those groups whose members commit this inchoate crime--soliciting violation of the sexual deviancy laws--the statute would still violate the first amendment. The law would still have to be viewpoint neutral, which it is not. In R.A.V. v. City of St. Paul, the Supreme Court held that the first amendment prohibits content or viewpoint discrimination even when limited to

8

goes too far in prohibiting mere advocacy--that is, the mere verbal fostering or promoting--of criminal conduct." <u>Gay Lesbian Bisexual Alliance v. Sessions</u>, 1996 WL 42033 at *6. In <u>Brandenburg v. Ohio</u>, 395 U.S. 444, 89 S. Ct. 1827 (1969) (per curiam), the Supreme Court wrote that "the constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action."  395 U.S. at 447, 89 S. Ct. at 1829.[7]

---

a category of unprotected speech.  505 at 388, 112 S. Ct. at 2546.

7. Attached to the Attorney General's motion for partial stay is a series of exhibits apparently downloaded from various "web sites" on the World Wide Web that were accessible, though indirectly, from the "home page" of the GLBA-UA.  These exhibits included explicit photographic depictions of sexual acts deemed "deviant" under Alabama's criminal statutes and personal advertisements explicitly describing such acts.  The Attorney General admitted that these exhibits had nothing to do with the upcoming conference or with GLBA-USA.

It is noteworthy, however, that the Attorney General admitted that no other organization's "home page" had been reviewed for compliance with § 16-1-28, though GLBA-USA's counsel represented to the court that many other organizations at the University of Alabama have "home pages."  While, as stated, nothing in this opinion should be taken to restrict the authority of the State to enforce its criminal laws, including its obscenity, sodomy and sexual misconduct laws, the Supreme Court has made clear that that authority must still be exercised within the constraints of the first amendment:

> "A State might choose to prohibit only that obscenity which is the most patently offensive in its prurience--i.e., that which involves the most lascivious displays of sexual activity.  But it may not prohibit ... only that obscenity which includes offensive <u>political</u> messages."

9

At oral argument on February 12, it became clear that the Attorney General was asking the court to limit its holding to § 16-1-28's application to GLBA-USA in the past, and thus to leave open the permissible application of the statute in future, particularly to other campus groups. He argues that the event at the University of Alabama presents a new and separate set of facts not within the reach of this litigation. This argument must be rejected. GLBA-USA intends to attend the conference at the University of Alabama. To the extent that the Attorney General seeks to apply the statute to the conference, and thus to those attending it, GLBA-USA is subject to continued impermissible sanctions under the statute after it returns to its own campus at the University of South Alabama. In other words, it is subject to sanctions under § 16-1-28 for its participation in the conference. Moreover, GLBA-USA seeks to hold on its own campus the same kinds of discussion regarding AIDS and sexually-transmitted disease awareness and education, which in the past has included seminars on "Safer Sex for Women," "Safer Sex for Men," and "HIV/AIDS 101."[8]  Thus, to stay the court's holding and allow the statute to apply to such discussions, as requested by the Attorney General, would again subject GLBA-USA to sanctions under the statute, impermissibly violating its first amendment rights.

An additional reason for rejecting the Attorney General's as-

---

R.A.V. v. City of St. Paul, 505 U.S. at 388, 112 S. Ct. at 2546. In other words, even obscenity laws must be viewpoint neutral. Id.

8.  Joint Record, volume one at 0214-16, 0221, 0225.

10

applied argument is that on questioning by the court, the Attorney General could not come up with a single prospective application of the statute that would not unconstitutionally infringe upon GLBA-USA's right to exercise free speech.  Here, the statute, both facially and as applied, has essentially the same reach.

Second and Third Factors:  Balancing Harms.  As stated in his motion, the Attorney General contends that the "State of Alabama will incur immediate and irreparable harm if the conference takes place in violation of the statute, and the statute is subsequently upheld."  This alleged threatened harm has dissipated, now that the Attorney General indicated that, even if the partial stay were granted, no efforts would be made to stop the Conference.  The Attorney General also indicated that he wanted the statute to remain available for use, if appropriate, after the conference, presumably to pursue civil sanctions and recoup funds under the statute.  Although the State could conceivably be unable to recoup funds pending appeal if the stay is denied, the harm of granting the stay on GLBA-USA and other persons would unquestionably inflict far greater harm.

The harm of granting a stay on GLBA-USA and other persons would be both irreparable and great.  As stated above, staying the declaratory judgment would subject GLBA-USA members to future prosecution and harassment under the statute.  GLBA-USA members who attended the conference could be sanctioned, or their organization sanctioned, once they returned home.  Also, GLBA-USA would not be able to hold on its own campus the same kinds of educational

11

discussions regarding sexuality that will be held at the University of Alabama.  "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable harm."  <u>Elrod v. Burns</u>, 427 U.S. 347, 373, 96 S. Ct. 2673, 2690 (1976).

<u>Fourth Factor:  Public Interest</u>.  "Vital First Amendment speech principles are at stake here."  <u>Rosenberger v. Rector & Visitors of Univ. of Va.</u>, __ U.S. at __, 115 S. Ct. at 2520.  "The danger to free speech which these principles seek to contain 'is especially real in the University setting, where the State acts against a background and tradition of thought and experiment that is at the center of our intellectual and philosophic tradition. ... For the University, by regulation, to cast disapproval on particular viewpoints of its students risks the suppression of free speech and creative inquiry in one of the vital centers for the nation's intellectual life, its college and university campuses.'"  <u>Gay Lesbian Bisexual Alliance v. Sessions</u>, 1996 WL 42033, 42034 (M.D. Ala., January 29, 1996) (quoting <u>Rosenberger v. Rector & Visitors of Univ. of Va.</u>, __ U.S. at __, 115 S. Ct. at 2520)).  Undoubtably, the public interest lies in protecting these "vital principles," even pending appeal.

### III.

The court now turns to consider GLBA-USA's motion to have the Attorney General enjoined, pending appeal, from enforcing the statute against GLBA-USA, the GLBA at the University of Alabama, or

the upcoming Conference. A court may issue an injunction pending appeal "in order to maintain the status quo and insure the enforcement of its previous orders." Plaquemines Parish Comm'n Council v. U.S., 416 F.2d 952, 954 (5th Cir. 1969).[9] However, the Attorney General has reassured the court that he will act in accordance with the court's judgment of January 29 and this order as long as they remain in effect. The court therefore again concludes that it is not necessary to issue an injunction at this time.

For the reasons stated above, it is ORDERED:

(1) That the motion for partial stay filed by defendant Attorney General Jeff Sessions on February 8, 1996, is denied; and

(2) That the motion for injunctive relief filed by plaintiff Gay Lesbian Bisexual Alliance of the University of South Alabama on February 12, 1996, is denied.

DONE, this the 13th day of February, 1996.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE

---

9. In Bonner v. Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.