```
                                                           FILED
   RECEIVED       IN THE UNITED STATES DISTRICT COURT
                   FOR THE MIDDLE DISTRICT OF ALABAMA    APR 0 1 1996
 '96 MAR 27 AM 11 52      NORTHERN DIVISION
                                                      THOMAS C. CAVER, CLERK
 THOMAS C. CAVER, CLK                                 BY _____
 U.S. DISTRICT COURT  BISEXUAL ALLIANCE,)                    DEPUTY CLERK
 MIDDLE DISTRICT ALA.
 GAY LESBIAN
           Plaintiff                    )
                                        )
      vs.                               )   CIVIL ACTION NO.
                                        )       94-T-1178-N
      JEFF SESSIONS, et al.,            )
                                        )
                                        )
           Defendants.                  )
```

### OBJECTION TO MOTION FOR THE AWARD OF ATTORNEYS FEES AND COSTS

---

The State of Alabama objects to the plaintiff's motion for the award of attorneys fees on the following grounds.

### INTRODUCTION

The State defendants have only three objections to the motion of the plaintiff: (1) the hourly rate sought by their attorneys is too high; (2) a lesser rate should be used for attorney travel time; and (3) some of the expenses requested are undocumented. The State defendants do not dispute that the plaintiffs are prevailing parties under 42 U.S.C. §1988. The State defendants also do not object to the reasonableness of the services performed, hours recorded, and documented

expenses incurred by the plaintiff's attorneys. The objection of the State defendants is that the hourly rate requested by the plaintiff's attorneys is in excess of the prevailing market rate for their services; the same rate is unjustified for the attorney travel time in this case; and some of the requested expenses are undocumented.

## ARGUMENT

I. ATTORNEY HOURLY RATE

A. Montgomery is the Relevant Market

As the 11th Circuit Court of Appeals stated in Norman v. Housing Authority of City of Montgomery, a "reasonable hourly rates is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation."  836 F.2d 1292, 1299 (11th Cir. 1988) (citing Blum v. Stenson, 465 U.S. at 895-96 n.11).  This Court has based rates on the prevailing market rate "in the community", Lee v. Randolph County Bd. of Educ., 885 F.Supp. 1526, 1528 (M.D. Ala. 1995).  The 11th Circuit in Norman, supra at 1305, said that an award made in the Northern District of Alabama is not evidence of the prevailing rate in Montgomery.

Here, Attorney Ruth Harlow is requesting that New York be viewed as the relevant community, while Attorney

Fern Singer is suggesting Birmingham as the relevant community. The State defendants object to the use of New York as the relevant community. Plaintiff has not met its burden of showing a lack of Montgomery attorneys willing or able to handle their claim. Cullens v. Georgia Dept of Transportation, 29 F.3d 1489, 1494 (11th Cir. 1994). There is no affidavit evidence that there were no Montgomery attorneys familiar with the discrimination issues in this case who could have handled it. Brooks v. Georgia State Bd. of Elections, 997 F.2d 857, 869 (11th Cir. 1993). Nor have plaintiffs shown that they have been unable through diligent, good faith efforts to retain local counsel. Donaldson v. O'Connor, 454 F.Supp. 311, 315 (N.D. Fla. 1978).

Harlow states in her affidavit that, "[l]ike all ACLU cases, this litigation on behalf of plaintiff was undertaken without any cost to that organization." Harlow Declaration at paragraph 9. The free-service policy of the ACLU invites would-be plaintiffs to use their out-of-state services, rather than shop locally for legal services. The attorney fee request is devoid of any plaintiff affidavit stating that they had tried to obtain local counsel. The Harlow Declaration at paragraph 13 includes an unsupported claim that this type

of case limits the availability of counsel, which does not support the hyperbole in the Memorandum of Law at 7-8 that Attorney Singer was "the only Alabama attorney that the ACLU was able to enlist as counsel." Ms. Singer herself states in her Declaration at paragraph 5 that she has been an active member of Alabama's ACLU's legal committee since becoming a member of the Alabama Bar, but makes no claim that involvement with the ACLU or this case affected her caseload or reputation. Ms. Singer does not even allege that her earlier involvement in another case involving similar clients, Auburn University v. Auburn Gay and Lesbian Association et al., No. 92-H-374-E (M.D. Ala.), adversely affected her legal career. In fact, her Declaration shows just the opposite: she became a shareholder in January 1995 in Sirote & Permutt, one of Alabama's most prestigious law firms. Thus, Singer's Declaration undercuts Harlow's Declaration on this point.[1]

---

[1] Plaintiffs have not even attempted to make a showing of what the plaintiffs would have faced were counsel not to believe he would recover fees. Robinson v. Alabama State Dept. of Educ., 727 F.Supp. 1422, 1432 n.29 (M.D. Ala. 1989). Plaintiffs could not make such a showing because of the free-service policy of the ACLU. Harlow Declaration at paragraph 9.

**B.   To Determine the Market Rate, the Court Must Know the Regular Rate of the Plaintiff's Attorneys.**

In their motion, the plaintiff addressed what other attorneys in other cases have been awarded by federal courts, but the plaintiff omitted any information about rates charged and collected for the legal work of Ms. Harlow in any case.  It is well-established that this omitted information is critical to any determination of the market rate for these attorneys.

The State defendants submit that the market rate for these attorneys is quite different from their requested rates in this case.  The State defendants submit that none of the plaintiff's attorneys have ever charged and collected from a regular client such high rates for any complex litigation.  The State defendants submit that the proper hourly rate for the services of Ms. Harlow and Ms. Singer should be $150 not exceed $175.

Awards under federal fee shifting statutes require a determination of the prevailing market rate for the plaintiff's attorneys, not a rate that the plaintiff's attorneys would like to charge. Norman v. Housing Authority of the City of Montgomery, 836 F.2d 1292 (11th Cir. 1988).  The task for the court is to simulate the market:

> ...     The judge assumed that he was
> searching for the "just" or "fair"
> price of legal services, what the
> lawyers "deserve." Perhaps, in a
> just world, first violins would earn
> more than second fiddles.
> Frequently, in this world, the two
> earn the same; sometimes second
> chairs earn more. Prevailing
> plaintiffs are entitled not to a
> "just" or "fair" price for legal
> services, but to the _market_ price for
> legal services. ...

Pressley v. Haeger, 977 F.2d 295, 299 (7th Cir. 1992) (original emphasis).

The best evidence of the prevailing market rate is not what other attorneys charge in their civil rights cases, but what these attorneys regularly receive in the market. In Barrow v. Falck, 977 F.2d 1100 (7th Cir. 1992), the court reversed an award of an hourly rate of $135 because that rate exceeded the regular rate of $80 to $110 an hour charged by the plaintiff's attorney. Judge Easterbrook explained for the Court that different attorneys have different market rates:

> ...     Perhaps _other_ attorneys in
> Central Illinois have market rates in
> the range of $135; rates vary with
> skill and the time a lawyer needs to
> accomplish a task. But _this_ attorney
> had a market rate of $110 or less.
> "[I]t is not the function of
> judges in fee litigation to determine
> the equivalent of the medieval just
> price. It is to determine what the
> lawyer would receive if he were
> selling his services in the market

6

> rather than being paid by court order." ... No need to answer a hypothetical in this case, for we know what counsel *did* receive by selling his services in the market.

Id., at 1105 (original emphasis; quoting In Re Continental Illinois Securities Litigation, 962 F.2d 566, 568 (7th Cir. 1992).

Judge Easterbrook also explained that, after the decision of the Supreme Court in Burlington v. Dague, 112 S.Ct. 2638 (1992), which precluded enhancement of fees for contingency cases, a plaintiff's attorney cannot expect a higher rate for civil rights cases:

> A premium rate for civil rights cases, applicable only when the other side is paying, looks like nothing as much as a disguised multiplier. Judges must stick to the market rate they could receive in other engagements. Unless there is evidence that attorneys receive more per hour, from their own clients, in civil rights litigation than in other kinds of litigation-and this record contains no such evidence-the court must use the hourly rate for the attorney's regular legal services.

Barrow, 977 F.2d at 1105. This Court must determine, therefore, the opportunity cost of the plaintiff's attorneys for this litigation.

The State defendants also agree that this Court must review Norman v. Housing Authority of City of Montgomery, 836 F.2d 1292, 1299-1301 (11th Cir. 1988), in reference

to the prevailing market rate for a reasonable attorney's fee. Specifically, the State defendants direct the attention of the Court to the following statements from Norman:

> ...Satisfactory evidence at a minimum is more than the affidavit of the attorney performing the work.... It should also be noted that in line with the goal of obtaining objectivity, <u>satisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits</u>. Testimony that a given fee is reasonable is therefore unsatisfactory evidence of market rate....
>
> ...
>
> ...Once a district court has winnowed down the comparables offered by the parties to those which are relevant to the facts and circumstances of the case, the client, and the attorney before it, this court would still expect that there might be a range in prevailing market rates. That range is accounted for almost always by experience, skill and reputation. A closer analysis suggests that reputation and experience are only proxies for skill, which in <u>rational economic environment</u> is the ultimate determinant of compensation level.
>
> ...
>
> In summary, ordinarily there are no quotations for the prevailing market rate for a given attorney's services. Instead, <u>the best information available to the court is usually a range of fees set by the market place</u>, with the variants best

8

>     explained by reference to an
>     attorney's demonstrated skill.

Norman, 836 F.2d at 1299-1301 (added emphasis). In sum, the issue before this Court is what hourly rate the plaintiff's attorneys would have received in the private market for legal services.

C. **The Prevailing Market Rate for the Services of the Plaintiff's Attorneys Does Not Exceed $175 An Hour.**

Ms. Harlow provides no information about what she has been awarded for legal work in cases that she has handled. The $235 per hour rate she requests "was set by the legal director of the ACLU as the hourly rate to be used by [her] in any fee applications made in 1996." Harlow Declaration at paragraph 10. This is not the hourly rate she has been awarded. In fact, she makes no representation about neither any rate she has ever been awarded nor any rate awarded the ACLU.[2] Ms. Singer likewise makes no representation of any rate she has been awarded. She does, however, state that her

---

[2] None of the cases cited in paragraph 11 are represented to be ACLU cases.

9

non-contingent hourly rate is now between $175-185.[3] She makes no declaration of what her customary charge was during the time when she performed most of her work in this case before joining one of Alabama's major law firms in Birmingham.

The State defendants contend, in accord with the 11th Circuit in Norman, supra at 1305, that a lesser rate would prevail in Montgomery, and state that $150 an hour would be reasonable.

However, the State recognizes in Lee v. Randolph County Bd. of Educ., 855 F.Supp. 1526, 1532 (M.D. Ala. 1995), this Court recently awarded Attorney Kenneth Thomas an hourly rate of $175 per hour. Attorneys Thomas and Singer have both been in practice for about the same amount of time. Singer Declaration at paragraph 6. Ms. Harlow has only been in practice for about half as long.[4] Harlow Declaration at paragraph 5.

---

[3] The Falkenberry affidavit makes no mention of rates for this type case or that the affiant reviewed any materials in this case.

[4] Exhibit A to Harlow Declaration appears to misrepresent Ms. Harlow's role in Shahar v. Bowers, 70 F.3d 1218, 1219 (11th Cir. 1995), as the reported decision does not identify her as the lead counsel. She
(Footnote Continued)

Therefore, based upon Ms. Singer's testimony of her <u>current</u> customary fee in Birmingham and the recent award by this Court to Mr. Thomas, the State submits that a rate of $150 an hour would be reasonable, but should not exceed $175 an hour.

Taken together, these admissions of the plaintiffs and their attorneys establish that the maximum prevailing market rates in this case are as follows:

|        | Hours  | Rate        | Total                      |
|--------|--------|-------------|----------------------------|
| Harlow | 301.00 | $150 - 175  | $45,150.00 - 52,675.00     |
| Singer | 58.15  | $150 - 175  | $ 8,722.50 - 10,176.25     |
| Totals | 359.15 |             | $53,872.50 - 62,851.25     |

The State defendants submit that the hourly rate for the plaintiffs' attorneys should be $150, but should not exceed $175.

II. **There Should Be a Lesser Rate for Attorney Travel Time**

While the State concedes an hourly rate of $150, but no greater than $175, the State submits that that rate

---

(Footnote Continued)
was one of eleven co-counsel in <u>Able v. Perry</u>, 880 F.Supp. 968, 970 (E.D. NY 1995).

11

should not be assessed for attorney travel time. Plaintiffs have made no showing that the travel time of their attorneys was spent on legal matters. While it is proper to award reasonable travel expenses, Cullens v. Georgia Dept. of Transp., 29 F.3d 1489, 1494 (11th Cir. 1994), absent a showing that travel time of attorneys was used to review legal documents in the case or pursue other legal work in this case, the rate should be reduced to one-half the $175 per hour rate. Dunten v. Kibler, 518 F.Supp. 1146, 1152 (N.D.Ga. 1981); Johnson v. Univ. College of UAB, 706 F.2d 1205, 1208 (11th Cir. 1983). But see Brown v. U.S.D. No. 501, Shawnee County, Kan., 878 F.Supp. 1430, 1437 (D. Kan. 1995) (travel time would not be compensated since, in the court's estimation, the case could have been handled by local counsel).

Accordingly, the calculation would be as follows:

**TRAVEL TIME**

| | Date | Hours |
|---|---|---|
| Singer | 6/17/95 | 4.0 [5] |

---

[5] Estimated based upon normal travel time between Montgomery and Birmingham.

12

| Harlow | 2/08/95 |  | 5.75 [6] |
|---|---|---|---|
|  | 2/09/95 |  | 3.0 [7] |
|  | 2/11/95 |  | 3.5 |
|  | 2/12/95 |  | 4.75 |
|  | 6/16/95 |  | 5.75 |
|  | 6/17/95 |  | 5.75 [8] |
| Total Hours |  |  | 32.50 hrs. |
|  |  | x $150 per hr. | x $175 per hr. |
|  |  | $4,875.00 | $5,687.50 |
| Half the rate |  | divided by 2 | divided by 2 |
| Reduction |  | $2,437.50 | $2,843.75 |

The State submits that the attorney fees should be reduced by $2,437.50 - 2,843.75 to the amount of $51,435.00 - 60,007.50.

III. Undocumented Expenses Should Not Be Allowed

---

[6] Based upon 6/16/95 actual travel time from NY to Montgomery submitted by Ms. Harlow.

[7] Estimate based upon normal travel time between Mobile and Montgomery.

[8] Based upon 6/16/95 actual travel time from NY to Montgomery submitted by Ms. Harlow.

13

Ms. Harlow provided backup for her claimed expenses, Ms. Singer did not. Since plaintiffs did not present the required evidence regarding the documents copied, including their use or intended use, the $176.72 in copying expenses should be disallowed. Cullens v. Georgia Dept. of Transp., 29 F.3d 1489, 1494 (11th Cir. 1994). Likewise, plaintiffs presented no evidence to support the claimed postage and telephone expenses, which are normal office overhead anyway. Therefore, the $306.17 in expenses without backup should be disallowed. Accordingly, expenses to be awarded should only be the $1,875.04 documented by Ms. Harlow.

## Conclusion

The State defendants submit that this Court should grant the motion of the plaintiffs for the award of attorneys fees, but the hourly rate awarded should be $150 an hour, but not exceed $175 an hour; a lesser rate should be used here for attorney travel time; and undocumented expenses should be disallowed.

Respectfully submitted,

JEFF SESSIONS
ATTORNEY GENERAL

*/s/ Thomas F. Parker*

THOMAS F. PARKER IV
DEPUTY ATTORNEY GENERAL

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of March, 1996, I did serve a copy of the foregoing, by placing the same in the United States Mail, first class, postage prepaid and addressed as follows:

> Fern Singer
> (205) 930-5158
> Sirote & Permutt
> P.O. Box 55727
> Birmingham, Alabama 35255-5727
> (205) 933-7111
>
> Ruth E. Harlow
> William B. Rubenstein
> American Civil Liberties Union
> 132 West 43rd Street
> New York, NY 10036

THOMAS PARKER IV
DEPUTY ATTORNEY GENERAL


ADDRESS OF COUNSEL:
Office of the Attorney General
Criminal Appeals Division
11 South Union Street
Montgomery, Alabama  36130
(334) 242-7300

0190MJ