FILED

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

JUN 6  1996

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

CLERK
U.S. DIST. COURT
MIDDLE DIST. OF ALA.
CLERK BY

GAY LESBIAN BISEXUAL ALLIANCE,  )
                                )
        Plaintiff,              )
                                )
    v.                          )    CIVIL ACTION NO. 93-T-1178-N
                                )
JEFF SESSIONS, in his official  )
capacity as Attorney General    )
of the State of Alabama,        )
et al.,                         )
                                )
        Defendants.             )

ORDER

Previously in this litigation, the court found that the Ala-
bama public funds and facilities statute, § 16-1-28 of the Alabama
Code (1975), violated the first amendment to the United States
Constitution as enforced through 42 U.S.C.A. § 1983.  The court
condemned the statute both facially and as applied at the Univer-
sity of South Alabama in Mobile, Alabama, Gay Lesbian Bisexual
Alliance v. Sessions, 917 F. Supp. 1548 (M.D. Ala. 1996), and at
the University of Alabama in Tuscaloosa, Alabama, Gay Lesbian
Bisexual Alliance v. Sessions, 917 F. Supp. 1558 (M.D. Ala. 1996).
The court stated that the statute impermissibly "discriminates on
the basis of viewpoint to permit universities and colleges to allow
themselves to be used for the presentation of all views about
social, sexual, and family issues except those dealing with the
subject-matter from the standpoint of those who are homosexual or
are concerned about issues having to do with homosexual people."
Gay Lesbian Bisexual Alliance, 917 F. Supp. at 1557.  This lawsuit
is now before the court on a motion by plaintiff Gay Lesbian Bisex-
ual Alliance (GLBA) for attorney's fees and expenses from defen-

dants Attorney General Jeff Sessions, University of South Alabama President Frederick P. Whiddon, and University of South Alabama Dean of Students Dale T. Adams. GLBA requests a total of $85,999.96 in attorney's fees and expenses.[1] For the reasons that follow, the court concludes that GLBA is entitled to recover $79,355.00 in attorney's fees and $2,181.21 in expenses, for a total of $81,536.21.

GLBA seeks fees pursuant to 42 U.S.C.A. § 1988(b), which authorizes courts to award reasonable attorney's fees to prevailing civil rights litigants. The defendants do not contest that GLBA is a prevailing party, and agree that the alliance is entitled to reasonable attorney's fees and expenses.

The starting point in setting any attorney's fee is determining the "lodestar" figure--that is, the product of the number of hours reasonably expended to prosecute the lawsuit and the reasonable hourly rate for work performed by similarly situated attorneys in the relevant legal market. After calculating the lodestar fee, the court should then proceed with an analysis of whether any portion of this fee should be adjusted upwards or downwards. Hensley v. Eckerhart, 461 U.S. 424, 433-34, 103 S. Ct. 1933, 1939-40 (1983).

---

1.  GLBA's fee request may be broken down as follows:

| Fees: | Ruth E. Harlow<br>Fern Singer | 301.00 hours x $235 = $70,735.00<br>58.15 hours x $225 = $13,083.75 |
|---|---|---|
| Expenses: | | $ 2,181.21 |
| TOTAL | | $85,999.96 |

2

In making the above determinations, the court is guided by the 12 factors set out in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974).[2] See Blanchard v. Bergeron, 489 U.S. 87, 91-92, 109 S. Ct. 939, 943-44 (1989); Hensley, 461 U.S. at 434 n.9, 103 S. Ct. at 1940 n.9. These factors are (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of professional relationship with the client; and (12) awards in similar cases.

## Reasonable Hours

Attorneys Ruth E. Harlow and Fern Singer represented GLBA in this matter. Harlow seeks compensation for 301.00 hours, and Singer seeks compensation for 58.15 hours. The court considers three Johnson factors--the time and labor required, the novelty and difficulty of the case, and the amount involved and the result

---

2. In Bonner v. Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

3

obtained--in assessing the reasonableness of the hours claimed. As stated, the defendants do not object to the number of hours. Further, the court has conducted an independent review of the hours claimed to determine if there was any time that should be excluded because it was "excessive, redundant, or otherwise unnecessary." Hensley, 461 U.S. at 434, 103 S. Ct. at 1939-40. The court is satisfied that the hours listed were necessary to securing relief in this case. The court further finds that the issues in this lawsuit were extremely difficult and complex, and that the hours expended were reasonable in relation to the difficulty of the issues. Based on this analysis, the court concludes that Harlow is entitled to compensation for 301.00 hours and Singer for 58.15 hours.

## Prevailing Market Rate

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reason- ably comparable skills, experience, and reputation." Norman v. Housing Authority of Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988). Harlow requests $235 an hour, and contends that New York City is the relevant legal market for determining her fee. Singer requests $225 an hour, and contends that Birmingham is the relevant legal market for determining her fee. To determine the prevailing market rate, the court will consider the following Johnson factors: customary fee; whether the fee is fixed or contingent; the novelty and difficulty of the questions; the skill required to perform the

4

legal services properly; the experience, reputation, and ability of the attorneys; time limitations; preclusion of other employment; undesirability of the case; nature and length of professional relationship with the client; and awards in similar cases.

Customary Fee: "The customary fee for similar work in the community should be considered." Johnson, 488 F.2d at 718. GLBA contends that the customary fee in the relevant markets for civil rights litigation is between $175 and $300 an hour for attorneys with Harlow's and Singer's experience. The defendants argue that the customary fee is between $150 and $175 for such attorneys. Based on the evidence and for the following reasons, the court finds that customary hourly rates are between $150 and $235 for attorneys of similar experience as Harlow and Singer.

The defendants' first objection is that, because the relevant legal market is Montgomery, the requested hourly rates are too high. Harlow and Singer respond that there should be not one, but two legal markets: New York City for Harlow and Birmingham for Singer. The court rejects all of these suggested markets and finds, instead, that the appropriate legal market should be the State of Alabama.

Although it is generally true that the "rate of attorney's fees is that of the place where the case is filed," Cullens v. Georgia Dep't of Transp., 29 F.3d 1489, 1494 (11th Cir. 1994), it is proper to consider a different legal market if it appears unlikely that there would be any attorneys in the local market who would be willing to take the case and who would possess sufficient

5

expertise in the area of law involved. Id. This case involved
very complex legal issues. In addition, issues involving the civil
rights of gays and lesbians are extremely unpopular, both locally
and statewide. See, e.g., Don Morse, Hooper Believes AU Group
Promotes Illegal Activity, Hopes to Nix Funding, Ala. Journal, Feb.
19, 1992, at 1 (Joint Record, vol. I at 154 (hereinafter JRI));
Sandee Richardson, House Bill Aims to End Funding of Gay Groups,
Crimson White, Feb. 28, 1992, at 1 (JRI at 192); Measure Targets
Homosexual Groups, Tuscaloosa News, March 5, 1992 (JRI at 193);
Tracey McCartney, Gay Groups Dealt Setback by Evans, Montgomery
Advertiser, Mar. 20, 1992, at 1A (JRI at 194); Bill Prohibits
Funding for Gay Student Groups, Mobile Press, May 1, 1992 (JRI at
196). Based on these factors, the court concludes that, if the
market were limited to one city or locale, including Montgomery, it
probably would have been extremely difficult to find an attorney
both willing to take the case and possessing sufficient skill and
experience in gay-and-lesbian and first-amendment rights law to
prosecute the case efficiently and effectively. However, looking
at the State as a whole, the court is convinced that there are at
least some lawyers with such attributes.

Moreover, in this case, the general requirement--that the
"rate of attorney's fees is that of the place where the case is
filed," Cullens, 29 F.3d at 1494--points toward a statewide market.
The United States District Court for the Middle District of Alabama
sits in Montgomery, the capital and center of government for the
State. This court is therefore the forum for legal claims from all

6

over the State, especially if the claims concern State matters of broad public application and interest. Indeed, this case dramatically demonstrates the breadth of the court's reach, because the events that gave rise to the litigation occurred not in the Middle District of Alabama but in Mobile in the Southern District of Alabama and in Tuscaloosa in the Northern District of Alabama. For such matters, the bar of this court is essentially the State as a whole, with lawyers typically coming from all across the State to file and defend claims.

In any event, whether the relevant market is New York City, Montgomery, Birmingham, or more appropriately the State of Alabama, the court would reach the same conclusions as to the appropriate rate range, that is, between $150 and $235. These rates comfortably fall within appropriate range for all of these markets.

The defendants' next objection is that the rates requested by Harlow and Singer are higher than the rates which they charge their other clients, and higher than either has been paid in other cases. Harlow responds that her usual hourly rate as of 1996 is $235 per hour, and Singer admits that her usual billing rate is approximately $185 per hour. This, without doubt, is an appropriate factor to be considered by the court; it is, however, not a sole determinative factor. Because "'reasonable fees' ... are to be calculated according to the prevailing market rates in the relevant community," Blum v. Stenson, 465 U.S. 886, 895, 104 S. Ct. 1541, 1547 (1984), the issue is the legal market rate, not an individual lawyer's rate. See also Norman, 836 F.2d at 1299; Public Interest

7

Group of New Jersey, Inc. v. Windall, 51 F.3d 1179, 1185 (3rd. Cir. 1995).

Based on the evidence, the court finds that hourly rates of between $150 and $235 are within the range charged by attorneys in New York City, Birmingham, Montgomery, or the State of Alabama as a whole, with approximately the same experience and skill as Harlow and Singer.

Fixed or Contingent Fee: "This factor focuses judicial scrutiny solely on the existence of any contract for fees that may have been executed between the party and his attorney." Medders v. Autauga County Bd. of Educ., 858 F. Supp. 1118, 1127 (M.D. Ala. 1994) (citing Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 483 U.S. 711, 723, 107 S. Ct. 3078, 3085 (1987)). "The fee quoted to the client or the percentage of the recovery agreed to is helpful in demonstrating the attorney's fee expectations when he accepted the case." Johnson, 488 F.2d at 718. In this case, there was no written agreement which would demonstrate the attorneys' fee expectations.

Novelty and Difficulty of the Questions: "Cases of first impression generally require more time and effort on the attorney's part. Although this greater expenditure of time in research and preparation is an investment by counsel in obtaining knowledge which can be used in similar later cases, he should not be penalized for undertaking a case which may 'make new law.' Instead, he should be appropriately compensated for accepting the challenge." Johnson, 488 F.2d at 718.

8

This case presented extremely complex legal issues involving application of a new statute and interpretation of recent cases from the United States Supreme Court. Further, cases involving the rights of gays and lesbians are a relatively new area of civil rights law, requiring a great deal of skill and expertise.

Skill Required to Perform the Legal Services Properly: "The trial judge should closely observe the attorney's work product, his preparation, and general ability before the court. The trial judge's expertise gained from past experience as a lawyer and his observation from the bench of lawyers at work become highly important in this consideration." Johnson, 488 F.2d at 718.

This complex case required highly skilled attorneys. The court finds that Harlow and Singer met this standard, and performed their work in a professional manner.

Experience, Reputation, and Ability of the Attorneys: "Most fee scales reflect an experience differential with the more experienced attorneys receiving larger compensation. An attorney specializing in civil rights cases may enjoy a higher rate for his expertise than others, providing his ability corresponds with his experience. Longevity per se, however, should not dictate the higher fee. If a young attorney demonstrates the skill and ability, he should not be penalized for only recently being admitted to the bar." Johnson, 488 F.2d at 718.

Although she has been practicing for only approximately nine years, Harlow is already an experienced civil rights attorney with a national reputation, especially in the area of gay and lesbian

9

rights law. Singer is also an experienced attorney, and both performed their work ably.

Moreover, as stated, this case was extremely complex, and the work done by Harlow and Singer was of the highest caliber. More importantly, the court is convinced that Harlow's expertise in gay and lesbian rights law, and Singer's general civil rights expertise, enabled them to prosecute this case very efficiently. Attorneys with less knowledge and experience would have taken many more hours to pursue this litigation. Therefore, Harlow's and Singer's efficiency justifies an hourly rate at the high end of the customary range. Cf. Dillard v. City of Elba, 863 F. Supp 1550, 1553 (M.D. Ala. 1993) (experienced attorneys prosecuted case in fewer hours than inexperienced attorneys would have); Curry v. Contract Fabricators Inc. Profit Sharing Plan, 744 F. Supp. 1061, 1071 (M.D. Ala. 1988) (attorney's "inexperience should be reflected in [lower] ... hourly rate"), aff'd, 891 F.2d 842 (11th Cir. 1990).

Time Limitations: Where there has been "[p]riority work that delays the lawyer's other legal work," this factor requires "some premium." Johnson, 488 F.2d at 718. There is no evidence that this case unduly delayed the attorneys' other work.

Preclusion of Other Employment: This factor "involves the dual consideration of otherwise available business which is foreclosed because of conflicts of interest which occur from the representation, and the fact that once the employment is undertaken the attorney is not free to use the time spent on the client's behalf

10

for other purposes." Johnson, 488 F.2d at 718. There is not enough evidence to support this factor.

Undesirability of the Case: "Civil rights attorneys face hardships in their communities because of their desire to help the civil rights litigant. ... Oftentimes his decision to help eradicate discrimination is not pleasantly received by the community or his contemporaries." Johnson, 488 F.2d at 718. Moreover, "civil rights litigation is seen "as very undesirable because it stigmatizes an attorney as a 'civil rights lawyer' and thus tends to deter fee-paying clients, particularly high-paying commercial clients, from seeking assistance from that lawyer." Stokes v. City of Montgomery, 706 F. Supp. 811, 815 (M.D. Ala. 1988), aff'd, 891 F.2d 905 (11th Cir. 1989) (table).[3] The results of such litigation tend to arouse the emotions of all concerned, and frequently the attorneys who bring these cases are the subjects of prolonged and vitriolic hostility. This factor "can have an economic impact on [an attorney's] practice which can be considered by the Court." Johnson, 488 F.2d at 718.

This case, perhaps more so than any other in recent times, has generated strong public disapproval. As stated, the issues involving the civil rights of gays and lesbians are extremely unpopular in Alabama.

---

3.   See also Medders, 858 F. Supp. at 1128; Robinson v. Alabama State Dept. of Educ., 727 F. Supp. 1422, 1428 (M.D. Ala. 1989), aff'd, 918 F.2d 183 (11th Cir. 1990) (table).

11

Nature and Length of Relationship with Client: GLBA had no prior relationship with its attorneys.

Awards in Similar Cases: "The reasonableness of a fee may also be considered in the light of awards made in similar litigation within and without the court's circuit." Johnson, 488 F.2d at 719. The court has awarded non-contingent fees in the range of $125 to $290 an hour in other civil rights cases. See, e.g., Reynolds v. Alabama Dep't of Transp, No. 85-T-665-N (M.D. Ala. Jan. 30, 1996); Reynolds v. Alabama Dep't of Transp, ___ F. Supp. ___, 1995 WL 861029 (M.D. Ala. 1995); James v. City of Montgomery, No. 94-T-264-N, 1995 WL 271138 at *4 (M.D. Ala. Apr. 19, 1995); Lee v. Randolph County Bd. of Educ., 885 F. Supp. 1526, 1532 (M.D. Ala. 1995); Medders, 858 F. Supp. at 1129; Wyatt v. Martin, No. 3195-N, 1991 WL 650065, at *3 (M.D. Ala. Dec. 17, 1991); Hidle v. Geneva County Bd. of Educ., 681 F. Supp. 752, 756-758 (M.D. Ala. 1988).

Finally, the defendants argue that Harlow and Singer should be compensated for travel time at one-half their usual hourly billing rate. GLBA responds that compensation for travel time is proper if, as here, it was reasonable to hire counsel from out of town. Compensation for travel time to the litigation site is proper, Johnson v. Univ. College of Univ. of Ala. in Birmingham, 706 F.2d 1205, 1208 (11th Cir. 1983), cert. denied, 464 U.S. 994, 104 S. Ct. 489 (1983), and this court has awarded such compensation at the attorney's usual hourly rate. See, e.g., Reynolds v. Alabama Dep't of Transp., ___ F. Supp. ___ , 1995 WL 861029 (M.D. Ala. 1995); Reynolds v. Alabama Dep't of Transp., No. 85-T-665-N (M.D. Ala.

12

Jan. 30, 1996). Further, because Harlow and Singer have billed their time conservatively, and because of the high degree of expertise both attorneys exhibited, it appears that the time each spent traveling was used productively.

The court is of the opinion, based on these criteria, that Harlow is entitled to $225 per hour and Singer is entitled to $200 per hour.

## Lodestar Calculation

The unadjusted lodestar for an attorney consists, as stated, of the product of the attorney's compensable hours multiplied by the prevailing market fee. The lodestars for GLBA's counsel are therefore as follows:   Harlow, 301.00 hours x $225 per hour = $67,725.00; Singer, 58.15 hours x $200 per hour = $11,630.00; resulting in a total of $79,355.00. An adjustment of the lodestar either upward or downward is unwarranted.

## Expenses

GLBA seeks $2,181.21 for expenses incurred in connection with the litigation.   With the exception of routine overhead office expenses normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation or as an aspect of settlement of the case, may be taxed as costs; the standard of reasonableness is to be given a liberal interpretation.   NAACP v. City of Evergreen, 812 F.2d 1332, 1337

(11th Cir. 1987); Dowdell v. City of Apopka, 698 F.2d 1181, 1192 (11th Cir. 1983).

The defendants object only to the expenses claimed by Singer. They contend that Singer has not submitted sufficient evidence to support the claimed expenses. Singer has described each claimed expense, and listed the amount expended. The court has conducted its own independent review of all the expenses and they generally appear to be reasonable. Therefore, the defendants' objection is overruled, and the court determines that GLBA may recover $2,181.21 for expenses.

Accordingly, for the above reasons, it is ORDERED that the motion for attorney's fees and expenses, filed by plaintiff Gay Lesbian Bisexual Alliance on February 26, 1996, is granted, and that Gay Lesbian Bisexual Alliance have and recover from defendants Attorney General Jeff Sessions, University of South Alabama President Frederick P. Whiddon, and University of South Alabama Dean of Students Dale T. Adams, the sum of $79,355.00 for attorney's fees and $2,181.21 for expenses, for a total of $81,536.21.

DONE, this the 6th day of June, 1996.

UNITED STATES DISTRICT JUDGE